**REESE RICHMAN LLP**
Michael R. Reese
michael@reeserichman.com
Kim E. Richman
kim@reeserichman.com
875 Avenue of the Americas, 18th Floor
New York, New York 10169
Telephone: (212) 579-4625
Facsimile: (212) 253-4272

- and -

**MILBERG LLP**
Sanford P. Dumain
sdumain@milberg.com
Peter E. Seidman
pseidman@milberg.com
Joshua E. Keller
jkeller@milberg.com
One Pennsylvania Plaza, 49th Floor
New York, New York 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JESSICA FINK, on behalf of herself and all others similarly situated, | Case No. 08-cv-9628 AKH (ECF CASE) |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | JURY TRIAL DEMANDED |
| TIME WARNER INC. and TIME WARNER CABLE, | |
| Defendants. | |

Plaintiff Jessica Fink, on behalf of herself and all others similarly situated ("Plaintiff"), by her undersigned attorneys, alleges as follows:

1. This is a class action on behalf of Plaintiff and all other similarly situated subscribers to the "Road Runner High-Speed Online" Internet service ("Road Runner") against Time Warner Inc. and Time Warner Cable (collectively, "Time Warner" or "Defendant") for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA"); New York Deceptive Sales Practices Act, N.Y. Gen. Bus. § 349; Common Law Fraud; Breach of Contract; Breach of Implied Covenant of Good Faith and Fair Dealing; and Unjust Enrichment. This class action seeks: (i) compensation for the damage caused by Defendant's illegal acts and (ii) declaratory and injunctive relief to end the Defendant's improper practices.

**NATURE OF THE CASE**

2. Time Warner's "Road Runner" Internet service is named after the Road Runner cartoon character best known for its lightening speed. Defendant promises that its Road Runner High Speed Online service, as the name itself suggests, provides an "always-on connection" at a "blazing speed" that is the "fastest, easiest way to get online". *See* http://www.roadrunneroffers.com/16/?cid=56460&affid=1919913137%3A%3Aexact_ time+warner&;http://www.timewarnercablespecial.com/internet.html?PID=google:road_runner (last visited November 7, 2008).

3. Defendant, however, does not in fact provide "always-on connection" at "blazing speed" as it promises. On the contrary, Defendant engages in a practice known as "throttling" whereby Defendant intentionally delays and/or blocks altogether certain Road Runner Internet communications thereby improperly preventing the free flow of online information otherwise accessible to subscribers.

4. In the July 2008 issue of *PCWorld* magazine, Defendant's spokesperson, Alex Dudley, essentially admitted that Time Warner selectively throttles Internet traffic.

5. Additionally, upon information and belief, Defendant selectively throttles Internet traffic, among other reasons, to prevent or impede subscriber access to free online content that Defendant provides as part of a premium service. The price for this premium service is $9.95 a month, which is in addition to the amount subscribers pay for Defendant's purportedly "always-on connection." Defendant thus secretly frustrates its subscribers enjoyment of Defendant's own service for the purpose of inducing subscribers to purchase more expensive services that would be unnecessary were it not for Defendants' misconduct.

6. This practice has been widely criticized and, on August 1, 2008, the Federal Communications Commission ("FCC") sanctioned one of Time Warner's competitors - Comcast Corp. - for the same type of illegal throttling practice alleged here when it issued a cease-and-desist order and required Comcast to disclose to its subscribers how it plans to manage traffic.

7. Providers of search engines applauded the crackdown. Google's Washington telecom and media counsel stated in response, "[w]e believe that such a commission order will provide useful clarity on what types of practices are acceptable under the agency's Internet freedom principles, and help ensure that today's broadband networks remain open platforms to the Internet . . . ***No broadband company…should be allowed to employ traffic management practices that harm the interests of consumers, and the Internet itself, by failing to deliver fair access to all of the Net's resources.*** " *See* http://www.pcmag.com/article2/0,1895,2325455,00.asp (last visited November 7, 2008) (emphasis added).

8. This class action complaint seeks to end Defendant's unauthorized practices and to recover the fees subscribers paid for services they did not receive.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 18 U.S.C. §1030, 28 U.S.C. §§1331, 1332 and 1367. This Court has personal jurisdiction over the Defendant pursuant to 18 U.S.C. §§1965(b) and (d) and because Defendant's principal places of business is within this District. The Court also has diversity jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, § 7, 119 Stat. 13 ("CAFA").

10. Venue is proper in this district pursuant to 18 U.S.C. §1965(a), 28 U.S.C. §1391(b), 15 U.S.C. §22, and 28 U.S.C. §1391 because the Defendant is found in this District, does business within this District, and conducts the interstate trade and commerce described below in substantial part within this District.

11. During all or part of the period in which the events described in this Complaint occurred, the Defendant participated in a scheme to defraud Plaintiff and other members of the Class.

12. The activities of Defendant, as described herein, were within the flow of, and had a substantial effect on, interstate commerce.

## PARTIES

13. Plaintiff Jessica Fink ("Plaintiff") is a citizen of New York and resides in New York County, New York. During the Class Period, Ms. Fink subscribed to the Defendant's Road Runner Internet service. Defendant did not disclose to Ms. Fink that Defendant would interfere with her Internet communications without her permission. Nor did Defendant inform Ms. Fink that it would discriminate against her attempts to share files with others on the World Wide Web. If Defendant had disclosed that its Road Runner Internet service did not, in fact, offer "blazing speed", an "always-on connection" or the "fastest, easiest way to

get online", or that Defendant would intentionally interfere with her Internet access, Ms. Fink would have not paid a premium for Defendant's Road Runner High-Speed Online service.

14. Defendant Time Warner Cable is headquartered at One Time Warner Center, New York, New York 10019. Defendant Time Warner Cable is one of the world's largest media and entertainment conglomerates. Its businesses include interactive services, cable systems, filmed entertainment, television networks and publishing. In September 1999 Time Warner Cable announced the launch of the Road Runner High Speed Online Internet service.

15. Defendant Time Warner Inc. is the parent of Time Warner Cable. Time Warner Inc. is headquartered at One Time Warner Center, New York, New York 10019.

**SUBSTANTIVE ALLEGATIONS**

16. Defendant promises its subscribers an "always-on connection" at "blazing speed" that is the "fastest, easiest way to get online" and advertises, markets and sells its high-speed Internet service based on claims that "Road Runner Honors Your Need for Speed; You'll Never Get Road Rage with Road Runner". *See* http://www.buytimewarnercable.com/internet.aspx?cpao=111&kw=road%20runner&cpca=tw_cable&cpag=tw_roadr&gclid=CJHc69O8pZYCFQOaFQodLzd_7Q. (last visited November 7, 2008). Defendant further claims premium service compared to its competitors in its online promotional materials, stating, "up to 3 times the speed of most standard DSL packages and up to 100x faster than dial-up so your family can spend their time on the computer learning, experiencing, and playing – instead of waiting". *See* "Faster Than DSL and Dial Up" tab at http://www.roadrunneroffers.com/16/?cid=56460&affid=1919913137%3A%3Aexact_time+warner&_ck=1&. (last visited November 7, 2008).

17. These representations allow Defendant to charge consumers a premium of up to more than 100% of the fees charged by its competitors. *Compare* http://www.roadrunneroffers.com/16/?cid=56460&affid=1919913137 %3A%3Aexact_time+warner& (offering Time Warner internet service for $29.95 a month) with http://www.earthlink.net/ (offering Earthlink internet service for $9.95 a month) (last visited November 7, 2008).

18. Such representations, however, are all contrary to Defendant's hidden practice of severely limiting the speed of certain Internet communications, such as BitTorrent peer-to-peer (P2P) file-sharing communications, Gnutella and other protocols or applications by which audio, video, voice and other content is communicated online. Furthermore, nothing in Defendant's Terms of Use indicates that the Defendant throttles traffic. Defendant has thus broken its promise of "Blazing speed" as well as its other promises of high-speed internet service, and, therefore, is in breach of both its contract and its implied covenant of good faith and fair dealing.

**Methods of Interference with "Always-On Connection" Internet Access by Forging Traffic**

19. Computers often exchange information on the Internet by using a standard protocol called Transmission Control Protocol ("TCP"). TCP is designed to provide reliable, ordered delivery of a stream of bytes from one program on one computer to another program on another computer. Wikipedia, the online encyclopedia, explains TCP, in relevant part, as follows:

> The Transmission Control Protocol (TCP) is one of the core protocols of the Internet Protocol Suite. TCP is so central that the entire suite is often referred to as "TCP/IP." Whereas IP handles lower-level transmissions from computer to computer as a message makes its way across the Internet, TCP operates at a higher level, concerned only with the two end systems, for example a Web browser and a Web server. In particular, TCP provides reliable, ordered delivery of a stream of bytes from one program on one computer to another program on another computer. Besides the

> Web, other common applications of TCP include e-mail and file transfer. Among its management tasks, TCP controls message size, the rate at which messages are exchanged, and network traffic congestion.

20. TCP is commonly used in Peer to Peer (or P2P) transmissions. P2P transmissions use diverse connectivity between participants in a network and the cumulative bandwidth of network participants rather than conventional centralized resources. Such networks are useful for many purposes. Sharing content files containing audio, video, data or anything else in digital format is very common, and real-time data, such as telephony traffic (telephone calls made over the internet), is also passed using P2P technology. Peer-to-peer transmissions account for roughly half of all traffic on the Web. For example, BitTorrent is a rapidly growing peer-to-peer file sharing application. It can quickly assemble large files for transfer and download by tapping into dozens, or even hundreds, of other participating computers. Numerous companies use BitTorrent as a legitimate protocol for exchanging data. "Vuze" (http://www.vuze.com/content/FeaturedContent.html), for instance, uses BitTorrent to distribute downloads from a huge library of licensed content.

21. When one computer detects that a P2P transmission is being impeded (e.g. because the connection to another computer has been refused), it sends a TCP message known as "reset" packets or "RST" packet. RST packets cause inbound Internet connections to close down entirely, aborting the transmission.

22. Based upon information and belief, Defendant uses stealth technology to frustrate its subscribers' efforts to share online content via Peer-to-Peer networks by sending forged reset packets to their computers thereby aborting the transfer of content. The two computers then will stop communicating as a result of false RST packets being planted by an imposter: the Defendant.

23. Based upon information and belief, as a result of Defendant's stealth technology, messages invisible to the user are seemingly being sent or received by the subscriber's computer that tell the other computer to stop communicating with it. Defendant is in effect impersonating parties as the respective computers attempt to communicate with one another. In other words, Defendant is behaving like a telephone operator breaking into a conversation, impersonating each talker in the voice of the other to communicate: "This call is over, I'm hanging up."

24. Defendant's misrepresentations, acts of concealment, failures to disclose and breaches of its agreement with its subscribers were knowing and intentional, and made for the purpose of deceiving Plaintiff and the members of the Class to maximize Defendant's gain. Indeed, Defendant is doubly enriched by these practices: First, Defendants lure Internet users into Road Runner Internet service subscriptions at a premium price by advertising that it has qualities that it in fact lacks. Second, Defendants steer subscribers toward its own more expensive internet services and digital cable content by blocking similar content otherwise accessible free of charge.

25. It is against equity and good conscience to permit Defendant to retain all the ill-gotten benefits it receives from its subscribers who are promised unfettered, high-speed access to the Internet.

**CLASS ALLEGATIONS**

26. Plaintiff and Class members incorporate and reallege the above paragraphs.

27. Plaintiff sues on her own behalf and on behalf of a nationwide Class of persons, under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, defined as all persons who, from November 7, 2003 to the date of Class certification, subscribed to Defendant's high-speed Internet service.

28. Plaintiff does not know the exact size of the proposed Class or the identities of the proposed Class members, since such information is in the exclusive control of Defendant. Plaintiff, however, believes that the Class encompasses over tens of thousands, possibly millions, of individuals who are geographically dispersed throughout the United States. Therefore, the proposed Class is so numerous that joinder of all members is impracticable.

29. All members of the Class have been subject to and affected by the same practices and policies described herein. There are questions of law and fact that are common to the Class, and predominate over any questions affecting only individual members of the Class. These questions include, but are not limited to the following:

- The nature, scope and operations of Defendant's wrongful practices;
- Whether Defendant intentionally accesses its subscribers' computers;
- Whether Defendant's practices breached its contract with its subscribers;
- Whether Defendant's practices breached its implied covenant of good faith and fair dealing with its subscribers;
- Whether Defendant has engaged in fraud, deceit and misrepresentation;
- Whether Defendant has been unjustly enriched;
- Whether the Court can enter declaratory and injunctive relief; and
- The proper measure of damages.

30. The claims of the named Plaintiff are typical of the claims of the Class and do not conflict with the interests of any other members of the Class in that both the Plaintiff and the other members of the Class are subject to Defendant's same wrongful practices.

31. Ms. Fink will fairly and adequately represent the interests of the Class. She is committed to the vigorous prosecution of the Class' claims and has retained attorneys who are qualified to pursue this litigation and have experience in Class actions.

32. The prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to individual members of the Class, which would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to the action, or could substantially impair or impede their ability to protect their interests.

33. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the parties opposing the Class. Such incompatible standards and inconsistent or varying adjudications, on what would necessarily be the same essential facts, proof and legal theories, would also create and allow to exist inconsistent and incompatible rights within the Class.

34. The Defendant has acted or refused to act on grounds generally applicable to the Class, making final declaratory or injunctive relief appropriate.

35. The questions of law and fact common to members of the Class predominate over any questions affecting only individual members.

36. A Class action is superior to other available methods for the fair and efficient adjudication of the controversies herein in that:

- Individual claims by the Class members are impractical as the costs of pursuit far exceed what any one individual Plaintiff or Class member has at stake;
- As a result, individual members of the Class have no interest in prosecuting and controlling separate actions;
- It is desirable to concentrate litigation of the claims herein in this forum; and
- The proposed Class action is manageable.

## CAUSES OF ACTION

## COUNT I

## VIOLATION OF COMPUTER FRAUD & ABUSE ACT 18 U.S.C. § 1030

37. Plaintiff and Class members incorporate and reallege the above paragraphs.

38. This claim for relief arises under 18 U.S.C. § 1030.

39. As set forth above, Defendant is violating 18 U.S.C. § 1030 by intentionally accessing its subscribers' computers without authorization.

40. As a result of engaging in such practices, Defendant causes damage by impairing the integrity or availability of data and information, as well as certain communications and protocols.

41. The aggregate damage being caused to the subscribers of Defendant's high-speed Internet service during the last one-year period is at least the statutory requirement of $5,000.00.

42. Defendants' intentional interference with its subscribers' connection to the Internet, and failure to provide access as promised, violates the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and Plaintiff and the Class are, thus, entitled to economic damages subject to proof at trial.

## COUNT II

## DECEPTIVE SALES PRACTICES - N.Y. GEN. BUS. § 349

43. Plaintiff and Class members incorporate and reallege the above paragraphs.

44. By continuously falsely representing during the Class Period that its high-speed internet service provides an "always-on connection" that is "blazing fast" and is the "fastest, easiest way to get online" so that one "can spend their time on the computer learning, experiencing, and playing – instead of waiting", when in fact Defendant intentionally interfered with its subscribers' connections to the Internet by delaying and/or blocking altogether certain

communications, Defendant engaged in material, deceptive, consumer-oriented acts, in the conduct of its business, that injured Plaintiff and all others similarly situated in violation N.Y. Gen. Bus. § 349.

45. The speed and accessibility of a high speed internet service is important to Plaintiff and all others similarly situated, and likely to affect their choices concerning these products and services. Plaintiff and all others similarly situated purchased Defendant's high speed internet service believing it would provide the speed, accessibility and quality that Defendant promised. Plaintiff and all others similarly situated were injured by Defendant's deceptive acts because they unknowingly paid a premium for a service that intentionally interfered with their connections to the Internet by delaying and/or blocking altogether certain communications.

46. As a direct and proximate cause of Defendant's violation of N.Y. Gen. Bus. § 349 (2007), Plaintiff and all others similarly situated have been damaged in an amount that will be proven at trial.

**COUNT III**

**BREACH OF CONTRACT**

47. Plaintiff and Class members incorporate and reallege the above paragraphs.

48. Plaintiff and Class members entered into a written or implied contract with Defendant to pay monthly fees in exchange for its high-speed Internet service.

49. Plaintiff and Class members performed their obligations under the contract by paying their monthly fees.

50. Defendant unjustifiably breached the contract by intentionally interfering with Plaintiff's and Class members' access and use of Defendant's high speed Internet service and, therefore, Plaintiff and the class are entitled to damages subject to proof at trial.

**COUNT IV**

**BREACH OF IMPLIED IN FACT CONTRACT AND COVENANT OF GOOD FAITH AND FAIR DEALING**

51. Plaintiff and Class members incorporate and reallege the above paragraphs.

52. Defendant, through its advertising and marketing of its high-speed Internet service, made uniform representations and offers regarding the quality of its high-speed internet service.

53. Plaintiff and Class members accepted Defendant's offer based upon Defendant's promises regarding the quality of its high-speed internet service and gave consideration to Defendant by paying their monthly fees. Plaintiff and Class members thus entered into an implied-in-fact contract with Defendant, which was thereby breached by Defendant's practice of offering "low-speed" Internet service and impairing access to the content, services and applications that the Internet has to offer.

54. Plaintiff and Class members performed all their obligations under the contracts by paying for their service.

55. Defendant breached its implied covenant of good faith and fair dealing by knowingly failing to provide Plaintiff and Class members with the service they desired, paid consideration for and thought they were receiving.

56. Plaintiff and Class members had the legal capacity to enter into the aforementioned implied agreements.

57. As a direct and proximate result of the breaches set forth herein, Plaintiff and Class members have suffered, and continue to suffer, damages in an amount which will be proven at trial, but which are in excess of the jurisdictional minimum of this Court.

**COUNT V**

**DECEIT FRAUD AND/OR MISREPRESENTATION**

58. Plaintiff and Class members incorporate and reallege the above paragraphs.

59. During the Class Period Defendant engaged in fraudulent, misrepresentative, false and/or deceptive practices.

60. These aforementioned fraud, misrepresentations, deceptive, and/or false acts and omissions concerned material facts that were essential to the analysis undertaken by Plaintiff and Class members when signing up for Defendants' high–speed Internet service.

61. Plaintiff and Class members would have acted differently had they not been misled, but instead been informed that Defendant did not provide "always-on connection" at "blazing speed" that was the "easiest way to get online" as promised.

62. By and through such fraud, deceit, misrepresentations and/or omissions, Defendant intended to induce Plaintiff and Class members to alter their position to their detriment.

63. Plaintiff and Class members justifiably and reasonably relied on Defendant's omissions and misrepresentations, and, as such, were damaged by the Defendant.

64. As a direct and proximate result of Defendant's omissions and misrepresentations, Plaintiff and Class member have suffered damages including paying for a high-speed Internet service they did not receive.

## COUNT VI

## UNJUST ENRICHMENT

65. Plaintiff and Class members incorporate and reallege the above paragraphs as if fully set out herein.

66. Defendant's deceptive scheme unjustly enriched Defendant, to the detriment of the Class, by causing Defendant to receive payments for a high-speed Internet service that it did not provide.

67. Plaintiff and Class members have been injured by paying for a high-speed Internet service that they did not receive.

68. Defendant's retention of funds paid by Plaintiff's and Class members violates the fundamental principles of justice, equity, and good conscience.

69. Defendant, therefore, should be ordered to return any funds obtained as a result of their deceptive scheme to the Class.

70. As a result of Defendant's deceptive, fraudulent and misleading practices, advertising, marketing and sales of its high speed Internet service, Defendants are enriched at the expense of its subscribers. Defendant's active interference with its high-speed Internet subscribers' file-sharing communications is beyond standard network management, and runs counter to the tradition and public policy of treating all types of Internet traffic equally. It is thus against equity and good conscience to permit Defendant to retain the ill-gotten benefits it receives from its subscribers who are promised unfettered, high-speed access to the Internet.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

(a) Certification of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiff as the representative of the Class, and designating her counsel as counsel for the Class;

(b) A declaration that Defendant has committed the violations alleged herein;

(c) Ordering Defendant to disgorge the payments and profits they wrongfully obtained at the expense of the Plaintiff and Class members;

(d) Ordering that restitution be made to Plaintiff and Class members for Defendant's unjust enrichment;

(e) Ordering that an accounting be made by Defendant of its wrongfully obtained payments and profits;

(f) An injunction preventing Defendant from engaging in future fraudulent practices;

(g) Costs of this action, including reasonable attorneys fees and expenses; and

(h) Any such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable as a matter of right.

DATED: November 7, 2008

Respectfully submitted,

**REESE RICHMAN LLP**

*/s/ Michael R. Reese*
Michael R. Reese
Kim E. Richman
875 Avenue of the Americas, 18th Floor
New York, New York 10169
Telephone: (212) 579-4625
Facsimile: (212) 572-4272

- and -

**MILBERG LLP**
Sanford P. Dumain
Peter E. Seidman
Joshua E. Keller
One Pennsylvania Plaza, 49th Floor
New York, New York 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

***Counsel for Plaintiff***