UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JESSICA FINK,

        Plaintiff,

           v.

TIME WARNER CABLE,

        Defendants.

Case No.
08 CIV 9628 (AKH)

**MEMORANDUM OF LAW IN SUPPORT OF
TIME WARNER NY CABLE LLC'S MOTION TO
COMPEL ARBITRATION AND/OR STAY PROCEEDINGS**

        Cahill Gordon & Reindel LLP
        *Attorneys for Defendant*
        80 Pine Street
        New York, New York  10005
        (212) 701-3000

*Of Counsel*:

    Jonathan D. Thier
    Joel Kurtzberg
    Y. Aryeh Haselkorn

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND .................................................................................................................... 2

ARGUMENT .......................................................................................................................... 3

CONCLUSION ...................................................................................................................... 8

## TABLE OF AUTHORITIES

**Cases** — Page

*ACE Capital Re Overseas Ltd.* v. *Central United Life Insurance Co.*, 307 F.3d 24 (2d Cir. 2002).................................................. 5n

*Acquaire* v. *Canada Dry Bottling*, 906 F. Supp. 819 (E.D.N.Y. 1995).................................................................................... 5n, 7

*ADR/JB, Corp.* v. *MCY III, Inc.*, 299 F. Supp. 2d 110 (E.D.N.Y. 2004).................................................................................... 5n

*Dean Witter Reynolds Inc.* v. *Byrd*, 470 U.S. 213 (1985).......................... 3

*Deloitte Noraudit A/S* v. *Deloitte Haskins & Sells U.S.*, 9 F.3d 1060 (2d Cir. 1993).................................................................. 3

*F.D. Import & Export Corp.* v. *M/V Reefer Sun*, 248 F. Supp. 2d 240 (S.D.N.Y. 2002) ............................................................ 4n-5n

*First Options, Inc.* v. *Kaplan*, 514 U.S. 938 (1995) .................................. 6n

*General Media, Inc.* v. *Shooker*, No. 97 Civ. 510, 1998 WL 401530 (S.D.N.Y. July 16, 1998)........................................................ 6-7, 7n

*Genesco, Inc.* v. *T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir. 1987).......... 4, 7

*Louis Dreyfus Negoce S.A.* v. *Blystad Shipping & Trading Inc.*, 252 F.3d 218 (2d Cir.), *cert. denied*, 534 U.S. 1020 (2001) .......................... 5n

*Nanjing Textiles Imp/Exp Corp.* v. *NCC Sportswear Corp.*, No. 06 Civ. 52, 2006 WL 2337186 (S.D.N.Y. Apr. 11, 2006) .............................. 8n

*Thyssen, Inc.* v. *M/V Markos N.*, No. 97 Civ. 6181, 1999 WL 619634 (S.D.N.Y. Aug. 16, 1999), *aff'd sub nom. Thyssen, Inc.* v. *Calypso Shipping Corp.*, 310 F.3d 102 (2d Cir. 2002)................. 5n

*TravelClick, Inc.* v. *Open Hospitality Inc.*, No. 04 Civ. 1224, 2004 WL 1687204 (S.D.N.Y. July 27, 2004).................................................. 6

*Truck Drivers Local Union No. 807, I.B.T.* v. *Regional Import & Export Trucking Co.*, 944 F.2d 1037 (2d Cir. 1991).............................. 5n

*Upstate Shredding, LLC* v. *Carloss Well Supply Co.*, 84 F. Supp. 2d 357 (N.D.N.Y. 2000)........................................................ 7n

*Vera* v. *Saks & Co.*, 335 F.3d 109 (2d Cir. 2003).................................. 3

| **Cases** | Page |
|---|---|
| *Winter* v. *Natural Resources Defense Council, Inc.*, 129 S. Ct. 365 (2008) ................................................................................................ | 7n-8n |
| *Worldcrisa Corp.* v. *Armstrong*, 129 F.3d 71 (2d Cir. 1997) .................... | 3 |

Rules

| | |
|---|---|
| Fed. R. Civ. P. 25(c) ................................................................................ | 1n |

Statutes

Federal Arbitration Act

| | |
|---|---|
| § 3, 9 U.S.C. § 3 (2006) ........................................................................... | 1 |
| § 4, 9 U.S.C. § 4 (2006) ........................................................................... | 1 |

N.Y. Gen. Bus. Law

| | |
|---|---|
| § 349 (McKinney 2004) ........................................................................... | 5n |

**PRELIMINARY STATEMENT**

Pursuant to Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 3, 4 ("the FAA"), Defendant Time Warner NY Cable LLC, doing business as Time Warner Cable of New York City ("TWCNYC"),[1] requests that the Court stay this action and refer Plaintiff's damages claims to arbitration.[2] Those claims fall squarely within the scope of a broadly worded arbitration clause set forth in the Subscriber Agreement between plaintiff and TWCNYC.

Plaintiff's Complaint seeks damages and injunctive relief for herself and a putative class of Time Warner Cable broadband internet cable service subscribers in connection with TWCNYC's network management practices — the means by which TWCNYC manages data transmitted over its Internet networks. The Complaint alleges that TWCNYC's network management practices — what the Complaint pejoratively refers to as "throttling" — damaged Plaintiff by impermissibly slowing down Internet traffic over TWCNYC's networks. The Complaint alleges that (i) TWCNYC's practices were neither adequately disclosed by TWCNYC nor authorized by the contract between Plaintiff and TWCNYC, and (ii) Plaintiff would not have subscribed to TWCNYC's Internet service had she known about TWCNYC's network management practices.

As the Complaint acknowledges, Plaintiff's relationship with TWCNYC was and is governed by certain contractual "Terms of Use," as set forth in, among other things, a "Subscriber Agreement." That Agreement contains an arbitration clause mandating that all claims

---

[1] Plaintiff has named "Time Warner Cable" as the defendant. The New York City cable system in question, however, is currently owned and operated by Time Warner NY Cable LLC, which does business as TWCNYC. Time Warner NY Cable LLC is a successor in interest to Time Warner Cable Inc. See Fed. R. Civ. P. 25(c).

[2] By its terms, the arbitration clause in Plaintiff's Subscriber Agreement does not apply to Plaintiff's claims for injunctive relief. Those claims should nevertheless be stayed for the reasons set forth on pages 6-8 below.

"arising out of or relating to" that Agreement be resolved through arbitration. Though the clause specifically exempts Plaintiff's claims for injunctive relief from arbitration, the clause also prohibits Plaintiff from combining arbitrable and nonarbitrable claims in a single action, which is precisely what Plaintiff does here. Because Plaintiff's damages claims "arise out of or relate to" the Subscriber Agreement, the Court should refer them to arbitration. With regard to Plaintiff's claims for injunctive relief, the Court should dismiss them for breach of the arbitration clause's prohibition against combining arbitrable and nonarbitrable claims. Alternatively, the Court should stay the claims for injunctive relief pending resolution of any arbitration Plaintiff may commence because the claims for damages and injunctive relief are so overlapping (indeed, they are identical) that adjudication of the arbitrable claims will necessarily determine the fate of Plaintiff's non-arbitrable claims.

## BACKGROUND[3]

Plaintiff subscribed to TWCNYC's cable-modem service beginning in December 2007. (*See* January 22, 2009 Affidavit of Christine Dzujna ("Dzujna Aff.") Ex. A) Plaintiff's use of TWCNYC's cable-modem service was, during all relevant times, and still is governed by a "Subscriber Agreement," which is attached to the Dzujna Aff. as Exhibit B. Paragraph 14 of the Subscriber Agreement contains an arbitration clause stating that "any past, present, or future controversy or claim arising out of or related to this agreement shall be resolved by binding arbitration administered by the American Arbitration Association . . . ." (*Id.* ¶ 14) Plaintiff's damages claims fall within the ambit of this clause and TWCNYC therefore respectfully requests that the Court refer them to arbitration. While the clause does not apply to Plaintiff's

---

[3] In this brief, we limit the discussion of facts to those relevant to this arbitration motion. The brief in support of our motion to dismiss, filed simultaneously herewith, contains a more detailed discussion of the allegations of Plaintiff's Complaint.

claims for injunctive relief, it does prohibit Plaintiff from bringing such claims together with arbitrable claims:

> The arbitrator of any dispute or claim brought under or in connection with this agreement shall not have the power to award injunctive relief; injunctive relief may be sought solely in an appropriate court of law. *No claim subject to arbitration under this agreement may be combined with a claim subject to resolution before a court of law.* (*Id*; emphasis added)

Plaintiff breached this provision of the Subscriber Agreement by combining her claims for damages with her claims for injunctive relief. The Court should therefore dismiss Plaintiff's claims for injunctive relief without prejudice. Alternatively, the Court should stay Plaintiff's claims for injunctive relief pending arbitration of Plaintiff's damages claims because of the factual overlap between both sets of claims and the questionable merit of Plaintiff's claims for injunctive relief.

**ARGUMENT**

The FAA "'requires the federal courts to enforce arbitration agreements, reflecting Congress' recognition that arbitration is to be encouraged as a means of reducing the costs and delays associated with litigation.'" *Vera* v. *Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003) (per curiam) (quoting *Deloitte Noraudit A/S* v. *Deloitte Haskins & Sells U.S.*, 9 F.3d 1060, 1063 (2d Cir. 1993)). In fact, the FAA "'leaves no place for the exercise of discretion by the district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Worldcrisa Corp.* v. *Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (quoting *Dean Witter Reynolds Inc.* v. *Byrd*, 470 U.S. 213, 218 (1985)).

In *Genesco, Inc.* v. *T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir. 1987), the Second Circuit set forth four questions courts should answer in determining whether to (i) compel arbitration and (ii) stay non-arbitrable claims, if any, pending arbitration: "[F]irst, [the court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of

that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration." *Id*. at 844 (citations omitted).

In this case, the answer to each of the *Genesco* questions points to arbitration of all of Plaintiff's claims for damages and, if not outright dismissal, at the very least a stay of the remaining claims for injunctive relief. *First,* there is no doubt that the parties agreed to arbitrate. Plaintiff cannot deny that she is bound by the Subscriber Agreement[4] as she has affirmatively relied on it by alleging a breach.[5] Thus, Plaintiff cannot claim not to be bound by the arbitration clause in that same agreement.[6]

---

[4] Plaintiff's Complaint refers to the contract between her and TWCNYC as the "Terms of Use." (Complaint ¶ 18)  The Subscriber Agreement between Plaintiff and TWCNYC defines "Terms of Use" as "all rules, terms and conditions set forth in this Agreement or otherwise established now or hereafter by TWC regarding permissible or impermissible uses of or activities related to, the HSD Service." (Dzujna Aff. Ex. B ¶ 15(p))  "Terms of Use" therefore encompasses, among other things, the terms of the Subscriber Agreement itself.

[5] *See* Complaint ¶ 18 (alleging "nothing in Defendant's Terms of Use indicates that Defendant throttles traffic.  Defendant has thus broken its promise . . . and, therefore, is in breach of both its contract and its implied covenant of good faith and fair dealing."); *id*. at ¶¶ 47-50 (setting forth Plaintiff's "Breach of Contract" claim).

[6] *See F.D. Import & Export Corp.* v. *M/V Reefer Sun*, 248 F. Supp. 2d 240, 248 (S.D.N.Y. 2002) (plaintiff bound by arbitration agreement "because [plaintiff] is suing under that contract"); *see id*. (plaintiff "'cannot pick and choose among the clauses of the [contract], selecting those that . . . impose liability while avoiding those that establish the forum where that liability is to be determined'") (quoting *Thyssen, Inc*. v. *M/V Markos N*, No. 97 CIV 6181, 1999 WL 619634, at *6 (S.D.N.Y. Aug. 16, 1999), *aff'd sub nom. Thyssen, Inc*. v. *Calypso Shipping Corp*., 310 F.3d 102 (2d Cir. 2002)).

*Second,* Plaintiff's claims for damages[7] all fall within the scope of the agreement to arbitrate.  The arbitration clause states — in language that could hardly be broader — that, with the exception of claims for injunctive relief, "any past, present, or future controversy or claim arising out of or related to this agreement shall be resolved by binding arbitration." (Dzujna Aff. Ex. B § 14.)[8]  Language of this breadth creates "a presumption of arbitrability."[9] Furthermore, because all of Plaintiff's claims are founded on the assertion that TWCNYC's conduct was either not disclosed in or was not authorized by the Subscriber Agreement, there can be no doubt that each of Plaintiff's claims constitutes a "claim arising out of or related to" the Subscriber Agreement.  Besides, the Subscriber Agreement provides that "the arbitrability of disputes shall be determined by the arbitrator." (Dzujna Aff. Ex. B § 14).  Thus, the Court should leave any possible doubts as to arbitrability for resolution by the arbitrator.[10]

---

[7] The Complaint alleges six "Counts": violation of the Computer Fraud & Abuse Act (Count I), violation of GBL § 349 (Count II), breach of contract (Count III), breach of the implied covenant of good faith (Count IV), "deceit fraud and/or misrepresentation" (Count V), and unjust enrichment (Count VI).  Plaintiff does not plead separate Counts for damages and for injunctive relief, and the Complaint's "WHEREFORE" clause does not indicate the Counts in connection with which Plaintiff seeks damage, injunctive relief, or both.  Thus, as it appears that all of Plaintiff's claims seek damages, they are all within the ambit of the arbitration clause.  To the extent Plaintiff also seeks injunctive relief in connection with some or all of her claims, such claims (without the damages component) are outside the ambit of the arbitration clause.

[8] *See Truck Drivers Local Union No. 807, I.B.T.* v. *Regional Import & Export Trucking Co.*, 944 F.2d 1037, 1043 (2d Cir. 1991) (observing, in relation to nearly identical language, that "[w]e are hard-pressed to think of a more sweeping arbitration clause"); *Acquaire* v. *Canada Dry Bottling*, 906 F. Supp. 819, 835 (E.D.N.Y. 1995) (characterizing a similar arbitration clause as containing "the most sweeping language imaginable").

[9] *ACE Capital Re Overseas Ltd.* v. *Central United Life Insurance Co.*, 307 F.3d 24, 34 (2d Cir. 2002) (quoting *Louis Dreyfus Negoce S.A.* v. *Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir.), *cert. denied*, 534 U.S. 1020 (2001)); *see also ADR/JB, Corp.* v. *MCY III, Inc.*, 299 F. Supp. 2d 110, 114 (E.D.N.Y. 2004) (because "[t]here is a strong federal policy favoring arbitration, . . . any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

[10] *See First Options, Inc.* v. *Kaplan*, 514 U.S. 938, 943 (1995) ("[T]he question who has the primary

Footnote continued on next page.

*Third,* with regard to the arbitrability of Plaintiff's only federal statutory claim — her claim under the Computer Fraud and Abuse Act — courts in the Southern District of New York have already held that Congress did not intend such claims to be nonarbitrable. *See TravelClick, Inc.* v. *Open Hospitality Inc.*, No. 04 Civ. 1224, 2004 WL 1687204, at *5 n.4 (S.D.N.Y. July 27, 2004) ("Congress did not intend for claims arising under the Computer Fraud and Abuse Act and the Lanham Act to be nonarbitrable.").

*Finally,* even though Plaintiff's claims for injunctive relief are not arbitrable, they should either be dismissed for breach of the Subscriber Agreement's prohibition against combining arbitrable and nonarbitrable claims or be stayed pending arbitration of Plaintiff's damages claims to conserve judicial resources and to avoid the risk of inconsistent results.

As set forth above, the Subscriber Agreement provides that "[n]o claim subject to arbitration under this agreement may be combined with a claim subject to resolution before a court of law." (Dzujna Aff. Ex. B § 14)  Plaintiff breached this provision of the Subscriber Agreement by combining her claims for damages with her claims for injunctive relief. The Court should therefore dismiss Plaintiff's claims for injunctive relief.

Alternatively, Plaintiff's claims for injunctive relief should be stayed pending arbitration. As this Court has recognized, "a stay of remaining claims has been found appropriate where such action would 'promote judicial economy, avoidance of confusion and possible inconsistent results and would not work undue hardship or prejudice' against the parties." *General Media, Inc.* v. *Shooker*, No. 97 Civ. 510, 1998 WL 401530, at *11 (S.D.N.Y. July 16, 1998) (Batts, J.) (quoting *Acquaire*, 906 F. Supp. at 838).  Broad stay orders are therefore appropriate

---

Footnote continued from previous page.

> power to decide arbitrability turns upon what the parties agreed about *that* matter.") (citation and internal quotation marks omitted).

where non-arbitrable claims are "peripheral to, and grow out of" arbitrable claims.[11]  Here, Plaintiff's nonarbitrable claims are more than peripheral to, or derivative of, her arbitrable claims.  They are identical.[12]  The only difference is the relief requested.  Permitting identical claims seeking different relief to proceed simultaneously risks inconsistent results and would be an inefficient use of judicial resources.[13]

Furthermore, a stay is "particularly appropriate if the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit."  *Genesco*, 815 F.2d at 856.  As discussed above, all of Plaintiff's claims, except to the extent they seek injunctive relief, fall within the scope of the arbitration agreement.  Arbitrable issues therefore predominate here.

Plaintiff's nonarbitrable claims are also of questionable merit because Plaintiff has not met — or even pled that she has met — the standard for injunctive relief.[14]  To obtain an injunction, Plaintiff must demonstrate, among other things, that she is likely to suffer irreparable harm in the absence of the relief requested.[15]  It is black letter law that harm compensable

---

[11] *See General Media*, 1998 WL 401530, at *11 (staying RICO and Lanham Act claims because all claims were "so closely connected" that even non-arbitrable claims "would be affected and assisted by awaiting the outcome of [the] arbitration.").

[12] *See* footnote 6, above.

[13] *See Upstate Shredding, LLC* v. *Carloss Well Supply Co.*, 84 F. Supp. 2d 357, 369 n.12 (N.D.N.Y. 2000) (citing judicial economy and factual overlap as factors counting in favor of a broad stay).

[14] "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter* v. *Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 374 (2008).  "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."  *Id*. at 381 (citation and internal quotation marks omitted).

[15] *Id*. at 374.

through money damages is not "irreparable" and does not support injunctive relief.[16]  Here, Plaintiff seeks both money damages and injunctive relief for the exact same claims and does not even allege that she has been irreparably harmed, effectively admitting that Plaintiff's alleged injuries are compensable through money damages.  Injunctive relief is therefore inappropriate, and Plaintiff's claims for such relief are, at best, of questionable merit.  Moreover, for the additional reasons outlined in TWCNYC's contemporaneously filed motion to dismiss, Plaintiff cannot demonstrate a substantial (or any) likelihood of success on the merits on her claims for injunctive relief.

## CONCLUSION

For the reasons set forth above, this action should be stayed pending any arbitration proceedings that Plaintiff may choose to initiate.

Dated:  New York, New York
            January 23, 2009

> Respectfully submitted,
>
> /s/ Jonathan D. Thier
> Jonathan D. Thier (JT-1013)
> Joel Kurtzberg (JK-1552)
> Y. Aryeh Haselkorn (YH-2000)
> Cahill Gordon & Reindel LLP
> 80 Pine Street
> New York, New York  10005
> (212) 701-3000
>
> *Attorneys for Defendant Time Warner NY Cable Inc.*

---

[16]  *See Nanjing Textiles Imp/Exp Corp.* v. *NCC Sportswear Corp.*, No. 06 Civ. 52, 2006 WL 2337186, at *7  (S.D.N.Y. Apr. 11, 2006) (in "a classic legal action for breach of contract for which [Plaintiff] is primarily seeking monetary relief . . . . [t]he Court has no power to grant a preliminary injunction . . . .").