**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JESSICA FINK,

                 Plaintiff,

                 v.

TIME WARNER CABLE,

                 Defendant.

Case No.
08 CIV 9628 (AKH)

# MEMORANDUM OF LAW IN SUPPORT OF
# TIME WARNER NY CABLE LLC'S MOTION TO DISMISS

CAHILL GORDON & REINDEL LLP
*Attorneys for Defendant Time Warner NYC*
*Cable LLC*
80 Pine Street
New York, New York  10005
(212) 701-3000

*Of Counsel*:

    Jonathan D. Thier
    Joel Kurtzberg
    Y. Aryeh Haselkorn

**Table of Contents**

Page

Table of Authorities .................................................................................................ii

Preliminary Statement.............................................................................................1

Background .............................................................................................................3

Argument.................................................................................................................6

I.      The Complaint Fails to State a Claim Upon Which Relief Can Be Granted.....................6

      A.   Plaintiff's CFAA Claims Must Be Dismissed..................................................6
      B.   Plaintiff's GBL § 349 Claim Must Be Dismissed ....................................10
      C.   Plaintiff's Breach of Contract Claim Must Be Dismissed ........................12
      D.   Plaintiff's Claims For Breach of Implied In Fact Contract and Breach
          of the Covenant of Good Faith and Fair Dealing Must Be Dismissed .................13
      E.   Plaintiff's Fraud And Misrepresentation Claims Must Be Dismissed.....................14
      F.   Plaintiff's Unjust Enrichment Claim Must Be Dismissed .........................15

Conclusion.............................................................................................................16

**Table of Authorities**

Page

**Cases**

*Azimut-Benetti, S.p.A.* v. *Magnum Marine Corp.*, 55 A.D.3d 483 (1st
    Dep't 2008)............................................................ 13-14

*Barron Partners, LP* v. *Lab 123 Inc.*, No 07 Civ. 1135, 2008 WL 2902187
    (S.D.N.Y. July 25, 2008) ........................................ 12

*Bettan* v. *Geico General Insurance Co.*, 296 A.D.2d 469 (2d Dep't 2002) . 15

*Chambers* v. *Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ................... 4n, 12

*Civic Center Motors, Ltd.* v. *Mason Street Import Cars, Ltd.*, 387
    F. Supp. 2d 378 (S.D.N.Y. 2005).......................................... 10

*Cooper, Bamundo, Hecht & Longworth, LLP* v. *Kuczinski*, 14 A.D.3d 644
    (2d Dep't 2005).................................................... 15

*DG&A Management Services, LLC* v. *Securities Industry Ass'n Compli-
    ance and Legal Division*, 52 A.D.3d 922 (3d Dep't 2008) ..................... 13

*E360 Insight, LLC* v. *Comcast Corp.*, 546 F. Supp. 2d 605 (N.D. Ill.
    2008)................................................................ 8, 8n

*Educational Sales Programs, Inc.* v. *Dreyfus Corp.*, 65 Misc. 2d 412 (Sup.
    Ct. N.Y. Co. 1970) ................................................. 11

*Global Network Communications, Inc.* v. *City of New York*, 458 F.3d 150
    (2d Cir. 2006)........................................................ 8n

*International Ass'n of Machinists & Aerospace Workers* v. *Werner-
    Masuda*, 390 F. Supp. 2d 479 (D. Md. 2005)......................... 7

*Jaffe* v. *Paramount Communications, Inc.*, 222 A.D.2d 17 (1st Dep't
    1996)................................................................ 14

*Judge Rotenberg Educational Center* v. *Maul*, 230 A.D.2d 278 (3d Dep't
    1997)................................................................ 16

*Lacoff* v. *Buena Vista Publishing, Inc.*, 183 Misc. 2d 600 (Sup. Ct. N.Y.
    Co. 2000) ........................................................... 11

*Netrix Leasing LLC* v. *K.S. Telecom, Inc.*, No. 00 Civ. 3375, 2001 WL
    228362 (S.D.N.Y. Mar. 7, 2001) .......................................... 14

Page

*Nexans Wires S.A.* v. *Sark-USA, Inc.*, 319 F. Supp. 2d 468 (S.D.N.Y. 2004), *aff'd*, 166 Fed. Appx. 559 (2d Cir. 2006) ................................... 9-10

*Patane* v. *Clark*, 508 F.3d 106 (2d Cir. 2007)............................................. 6

*Pelman* v. *McDonalds*, 237 F. Supp. 2d 512 (S.D.N.Y. 2003) ................... 11

*Rudolph* v. *Tucerek*, 240 A.D.2d 935 (3d Dep't 1997)............................... 15

*Shamrock Foods Co.* v. *Gast*, 535 F. Supp. 2d 962 (D. Ariz. 2008)............ 7

*Shovak* v. *Long Island Commercial Bank*, 50 A.D.3d 1118 (2d Dep't 2008)................................................................................................... 11

*Skillgames, LLC* v. *Brody.* 1 A.D.3d 247 (1st Dep't 2003) ........................ 14

*Smith* v. *Chase Manhattan Bank USA, N.A.*, 293 A.D.2d 598 (2d Dep't 2002)................................................................................................... 16

*Steinberg* v. *PRT Group, Inc.*, 88 F. Supp. 2d 294 (S.D.N.Y. 2000) ........... 6, 13

*Stutman* v. *Chemical Bank*, 95 N.Y.2d 24 (2000) ...................................... 10

*Worldspan, L.P.* v. *Orbitz, LLC*, No. 05-C-5386, 2006 WL 1069128 (N.D. Ill. Apr. 19, 2006)................................................................................ 9

*Yucyco, Ltd.* v. *Republic of Slovenia*, No. 96 Civ. 4274, 1999 WL 169530 (S.D.N.Y. Mar. 25, 1999).................................................................... 14

**Congressional Reports**

H.R. Rep. No. 98-894 (1984), <u>reprinted in</u> 1984 U.S.C.C.A.N. 3689.......... 7-8

S. Rep. No. 99-432 (1986), reprinted in 1986 U.S.C.C.A.N. 2479.............. 7

**Rules**

Fed. R. Civ. P.

25(c)................................................................................................... 1n

**Statutes**

Computer Fraud and Abuse Act

§ 1030, 18 U.S.C. § 1030 (2006), as amended ....................................... 1, 6
§ 1030(a)(5)(C), 18 U.S.C. § 1030(a)(5)(C) (2006), as amended ........... 6-7, 9
§ 1030(e)(11), 18 U.S.C. § 1030(e)(11) (2006), as amended.................. 9

Page

N.Y. Gen. Bus. Law

§ 349 (McKinney 2004) ........................................................ 1-3, 10-11

Defendant Time Warner NY Cable LLC, doing business as Time Warner Cable of New York City ("Time Warner Cable"),[1] respectfully submits this memorandum of law in support of its motion to dismiss the Complaint filed by plaintiff Jessica Fink.[2]

## PRELIMINARY STATEMENT

Ms. Fink, who subscribes to Time Warner Cable's Road Runner Internet service, alleges that Time Warner Cable's network management practices — what the Complaint pejoratively refers to as "throttling" — damaged her by impermissibly slowing down Internet traffic over Time Warner Cable's networks.  More specifically, the Complaint alleges that (i) Time Warner Cable's practices were neither adequately disclosed by Time Warner Cable nor authorized by the contract between Ms. Fink and Time Warner Cable, and (ii) Ms. Fink would not have subscribed to Time Warner Cable's Internet service had she known about Time Warner Cable's network management practices.  On the basis of those allegations, Ms. Fink asserts six separate causes of action: (i) violation of Section 1030 of the Computer Fraud and Abuse Act (18 U.S.C. § 1030) (the "CFAA"); (ii) violation of Section 349 of New York's General Business Law; (iii) breach of contract; (iv) breach of "implied-in-fact" contract and/or breach of the implied covenant of good faith; (v) "deceit fraud and/or misrepresentation," and (vi) unjust enrichment.

---

[1]     Plaintiff has named "Time Warner Cable" as the defendant.  The New York City cable system in question, however, is currently owned and operated by Time Warner NY Cable LLC, which does business as TWCNYC.  Time Warner NY Cable LLC is a successor in interest to Time Warner Cable Inc.  See Fed. R. Civ. P. 25(c).

[2]     Time Warner Cable files this motion concurrently with its motion to compel arbitration as to Plaintiff's claims for damages, in which Time Warner Cable demonstrates that those claims are subject to mandatory arbitration.  If the Court grants Time Warner Cable's motion to compel ar- bitration, this motion is directed solely at Plaintiff's claims for injunctive relief.  If the motion to compel arbitration is not granted, this motion is directed at Plaintiff's entire Complaint.  Because Plaintiff does not plead separate counts for damages and injunctive relief, Time Warner Cable respectfully submits that this Court must in either case analyze each count of the Complaint.

The Complaint fails to state a claim because the contract documents entered into between Time Warner Cable and Ms. Fink fully disclose and authorize Time Warner Cable's network management practices. That fact alone is fatal to each of Ms. Fink's six causes of action, as follows:

- Plaintiff's CFAA claim (Count I) requires Plaintiff to plead that Time Warner Cable had "unauthorized" access to Plaintiff's computer. Even if Time Warner Cable's practices were found to constitute "access" to Plaintiff's computer — and they do not — any such "access" was not "unauthorized" because Time Warner Cable had the right to practice network management under the contract between Time Warner Cable and Plaintiff.

- Plaintiff's GBL § 349 claim (Count II) requires Plaintiff to plead that Time Warner Cable made "materially misleading" statements. Plaintiff cannot do so because Time Warner Cable disclosed its network management practices to Plaintiff in, among other places, the contract documents between them.

- Plaintiff's breach of contract claim (Count III) requires Plaintiff to plead a breach. But the contract documents establish on their face that Time Warner Cable had the right under the contract between Time Warner Cable and Plaintiff to engage in the network management practices of which Plaintiff complains here.

- Plaintiff's claim for breach of implied-in-fact contract and/or breach of the implied covenant of good faith (Count IV) cannot be sustained because such claims are not permitted when, as here, there is a written contract between Time Warner Cable and Plaintiff that expressly authorizes the actions that Plaintiff claims to constitute a breach.

- Plaintiff's "deceit fraud and/or misrepresentation" claims (Count V) cannot be sustained because it is well settled that adequate disclosure — such as that made in the contract documents between the parties here — defeats fraud and misrepresentation claims.

- Plaintiff's unjust enrichment claim (Count VI) requires Plaintiff to plead that she did not receive adequate compensation for her payments. Plaintiff cannot do so because Time Warner Cable disclosed its network management practices to Plaintiff, and Plaintiff therefore knew exactly the nature of the services she was purchasing. The compensation she received was therefore adequate.

While Ms. Fink does make a bare-bones assertion that "nothing in Defendant's Terms of Use indicates that the Defendant throttles traffic" (Complaint ¶ 18), even a cursory review of the

-2-

"Terms of Use" between Plaintiff and Time Warner Cable reveals that Ms. Fink's assertion is false.

Ms. Fink's claims should also be dismissed for other, count-specific reasons.  More specifically:

- Plaintiff's CFAA claim (Count I) should be dismissed because Ms. Fink fails to plead that Time Warner Cable had "access" to her computer or that Time Warner Cable caused Ms. Fink "loss," as those terms are defined under the CFAA.

- Plaintiff's GBL § 349 claim (Count II) should be dismissed because the statements Ms. Fink alleges were materially misleading were not and, in any case, are mere puffery and are therefore not actionable.

- Plaintiff's unjust enrichment claim (Count VI) should be dismissed as duplicative of her breach of contract claim (Count III).

## BACKGROUND

*Plaintiff's Subscription to Time Warner*
*Cable's Internet Service*

Ms. Fink, who lives in New York City, subscribed to Time Warner Cable's Road Runner Internet service beginning in December 2007.  (January 22, 2009 Affidavit of Christine Dzujna ("Dzujna Aff.") Ex. A)  As the Complaint acknowledges, Ms. Fink's use of Time Warner Cable's Road Runner Internet service was and is governed by certain "Terms of Use."  (*See* Complaint ¶ 18)  Those "Terms of Use" include a "Subscriber Agreement" and an "Operator Acceptable Use Policy."[3]  (Dzujna Aff. Exs. B-C)  Those documents — which are referred to but not

---

[3]  Section 15(p) of the Subscriber Agreement defines "Terms of Use" as "all rules, terms and conditions set forth in this Agreement or otherwise established now or hereafter by TWC regarding permissible or impermissible uses of or activities related to, the HSD Service."  (Dzujna Aff. Ex. B ¶ 15(p))  "Terms of Use" therefore encompasses both the terms of the Subscriber Agreement itself and the terms of the "Operator Acceptable Use Policy" as "terms and conditions . . . otherwise established . . . by TWC regarding permissible or impermissible uses of or activities related to, the HSD Service."

attached to the Complaint and may be considered on a motion to dismiss[4] — fully disclose and
authorize the network management practices of which Ms. Fink now complains.

Section 6(a) of the Subscriber Agreement provides:

> I understand that the actual speeds I may experience at any time will vary based
> on a number of factors, including the capabilities of my equipment, Internet con-
> gestion, the technical properties of the websites, content and applications that I
> access, *and network management tools and techniques employed by TWC*. . . . I
> also agree that TWC may use technical means, including but not limited to sus-
> pending or reducing the speed of my HSD Service, to ensure compliance with its
> Terms of Use and to ensure that its service operates efficiently.  I further agree
> that TWC and ISP have the right to monitor my usage patterns to facilitate the
> provision of the HSD Service and to ensure my compliance with the Terms of Use
> and to efficiently manage its network and the provision of services.  TWC or ISP
> may take such steps as it determines appropriate in the event my usage of the
> HSD Service does not comply with the Terms of Use.  Additionally, TWC may
> use such tools and techniques as it determines appropriate in order to efficiently
> manage its network and to ensure a quality user experience for its subscribers
> ("Network Management Tools").  These Network Management Tools are de-
> scribed  in the Terms of Use, which include the Acceptable Use Policy,
> http://help.twcable.com/html/twc_misp_aup.html.   (Dzujna Aff. Ex. B ¶ 6(a))
> (emphasis added)

The Acceptable Use Policy provides:

> The ISP Service may not be used in a manner that interferes with Operator's effi-
> cient operation of its facilities, the provision of services or the ability of others to
> utilize the ISP Service in a reasonable manner.  Operator [i.e., Time Warner Ca-
> ble] may use various tools and techniques in order to efficiently manage its net-
> works and to ensure compliance with this Acceptable Use Policy ("Network
> Management Tools"). These may include detecting malicious traffic patterns and
> preventing the distribution of viruses or other malicious code, and managing net-
> work resources through techniques such as *limiting the number of peer-to-peer
> sessions a user can conduct at the same time, limiting the aggregate bandwidth
> available for certain usage protocols such as peer-to-peer and newsgroups and
> such other Network Management Tools as Operator may from time to time deter-
> mine appropriate*.  (Dzujna Aff. Ex. C at 1) (emphasis added)

---

[4]     *See Chambers* v. *Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002) (On a motion to dismiss, a
court may consider "documents attached to the complaint as an exhibit or incorporated in it by
reference [or] matters of which judicial notice may be taken.").

Ms. Fink's chief complaint appears to be that Time Warner Cable improperly restricts peer-to-peer (or "P2P") file sharing communications[5] without disclosing that practice to subscribers. (*See* Complaint ¶¶ 18, 20-22) More specifically, Ms. Fink alleges that Time Warner Cable allegedly sends data packets known as "reset packets" or "RST packets" to subscribers' computers when those computers are engaged in peer-to-peer file sharing. (Complaint ¶¶ 21-23) Ms. Fink alleges that these "RST packets" shut off inbound Internet data transmissions, effectively restricting the subscriber's ability to engage in peer-to-peer transmissions. (*See* Complaint ¶ 23)

But the Subscriber Agreement expressly authorizes Time Warner Cable to manage peer-to-peer network traffic, which typically consumes substantial bandwidth. More specifically, the Subscriber Agreement gives Time Warner Cable the right to use "Network Management Tools" to manage network traffic and the Acceptable Use Policy expressly includes within the definition of "Network Management Tools" both "limiting the number of peer-to-peer sessions a user can conduct at the same time" and "limiting the aggregate bandwidth available for certain usage protocols such as peer-to-peer." Moreover, the Acceptable Use Policy further discloses that Time Warner Cable may use other "Network Management Tools" as it deems appropriate. The Complaint should be dismissed because Time Warner Cable's network management practices are both authorized by and disclosed in Time Warner Cable's contract with Ms. Fink, as well as for the additional reasons set forth below.

---

[5]     "Peer-to-peer" data transfers involve the recipient computer receiving information from a number of different sources rather than from a single source. Peer-to-peer transfers can therefore be faster and more efficient than single-source transfers. (Complaint ¶ 20)

**ARGUMENT**

**I.   The Complaint Fails to State a Claim Upon Which Relief Can Be Granted**

A motion to dismiss should be granted when the pleading does not allege "enough facts to state a claim for relief that is plausible on its face." *Patane v. Clark,* 508 F.3d 106, 111-12 (2d Cir. 2007) (citation and internal quotation marks omitted).  On a motion to dismiss, a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference [or] matters of which judicial notice may be taken."  *Chambers*, 282 F.3d at 153.  Where the allegations in the complaint contradict the plain language of documents attached to or referenced in the complaint, the language of the documents controls.  *See, e.g.*, *Steinberg v. PRT Group, Inc.,* 88 F. Supp. 2d 294, 300 (S.D.N.Y. 2000).

As set forth above, each of Ms. Fink's claims is founded on the allegation that Time Warner Cable's network management practices were either unauthorized or undisclosed — an allegation which Time Warner Cable's contract with Ms. Fink (which is pled and relied upon in the Complaint) facially demonstrates to be false.  For that reason, as well as certain additional, count-specific reasons, the Complaint should be dismissed.  We address Ms. Fink's claims in order below.

   A.   Plaintiff's CFAA Claims Must Be Dismissed

Count I alleges that Time Warner Cable's network management practices violated Section 1030 of the CFAA.  The Complaint alleges that Time Warner Cable caused Plaintiff "damage" by "intentionally accessing [Time Warner Cable's] subscribers' computers without authorization."  (Complaint ¶¶ 39-40)  Plaintiff appears to be attempting to come within the ambit of CFAA § 1030(a)(5)(C), which makes actionable "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, caus[ing] damage and loss."  To make out a claim under CFAA § 1030(a)(5)(C), Plaintiff must plead and prove that Time Warner Cable: (i)

intentionally accessed its subscribers' computers (ii) without authorization (iii) causing both "damage" and "loss."  *See* 18 U.S.C. § 1030(a)(5)(C).  The Complaint fails to sufficiently allege any of these elements.

*First*, the Complaint fails to allege that Time Warner Cable "accesses" subscribers' computers within the meaning of the CFAA.  The Complaint alleges that Time Warner Cable "accesses" its subscribers' computers when Time Warner Cable implements certain network management practices by allegedly sending data packets known as "reset packets" or "RST packets" to subscribers' computers.  (Complaint ¶¶ 21-23)  RST packets do not affect the data stored on a recipient computer in any way.  All they do is shut off inbound Internet data transmissions. (Complaint ¶ 21)  As such, Time Warner Cable's alleged sending of RST packets (even if true) does not constitute "access" within the meaning of the CFAA.

The CFAA originated as a criminal statute designed to "create a cause of action against computer hackers (e.g., electronic trespassers)" and was "'aimed at deterring and punishing certain 'high-tech' crimes.'"  *International Ass'n of Machinists & Aerospace Workers* v. *Werner-Masuda*, 390 F. Supp. 2d 479, 495-496 (D. Md. 2005) (quoting S. Rep. No. 99-432, at 4 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 2479, 2482).  The House committee report from the statute's enactment states that the CFAA "'deals with an 'unauthorized access' concept of computer fraud rather than the mere use of a computer.'"  *Shamrock Foods Co.*  v. *Gast*, 535 F. Supp. 2d 962, 965 (D. Ariz. 2008) (quoting H.R. Rep. No. 98-894, at 20 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3689, 3796).  According to the report, "'the conduct prohibited is analogous to that of 'breaking and entering' rather than using a computer . . . in committing the offense.'"  *Id.* The committee also emphasized concerns about "'hackers' who 'trespass into' computers and the inability of 'password codes' to protect against this threat.'"  *Shamrock*, 535 F. Supp. 2d at 965

-7-

(quoting H.R. Rep. No. 98-894. at 10-11, *as reprinted in* 1984 U.S.C.C.A.N. at 3695-97).  Put simply, "access" under the CFAA means hacking into a computer to either modify, copy, or destroy data contained on the computer or to use the computer to send spam emails.  It does not mean simply sending data packets to a computer.

The case law holds as much.  For example, in *E360Insight, LLC* v. *Comcast Corp.*, 546 F. Supp. 2d 605 (N.D. Ill. 2008), the court held that allegations similar to Plaintiff's allegations here were insufficient to meet the "access" element of the CFAA.  In its complaint, E360 alleged a CFAA claim based on allegations that Comcast was intentionally slowing the processing time of E360's e-mails and transmitted "false bounce information" to plaintiff's e-mail servers that would return sent e-mails to E360 and erroneously notify E360's server that the subscriber's e-mail addresses were no longer valid. (January 22, 2009 Affidavit of Jonathan D. Thier Ex. D ¶¶ 24, 40, 42)[6]  In addressing that claim, the court held, among other things, that transmitting "false bounce information" to plaintiff's email servers did not constitute "accessing" plaintiff's computers.  *See* E360 Insight, 546 F. Supp. 2d at 608 n.2. ("It is also impossible to see the allegations here as stating that Comcast intentionally accesses a computer without authorization.")  Similarly, Plaintiff's assertions that Time Warner Cable transmitted "reset packets" to subscribers' computers do not sufficiently allege that Time Warner Cable "accesses" subscribers' computers.

*Second*, the Complaint fails to allege that Time Warner Cable's alleged "access" to subscribers' computers was "without authorization."  As set forth above, the Complaint alleges that

---

[6]     Again, Defendant asks that the Court take judicial notice of the E360 Complaint, not for its truth but to note the allegations made and the holding of the *E360* court in considering those allegations.  *See Global Network Communications, Inc*. v. *City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (citation and internal quotation marks omitted)

Time Warner Cable "accesses" its subscribers' computers when Time Warner Cable implements certain network management practices by sending data packets known as "reset packets" or "RST packets" to subscribers' computers.  (Complaint ¶¶ 21-23)  Even if these allegations constituted "access" (and they do not), they would not constitute "unauthorized" access to subscribers' computers because, as set forth above, the Subscriber Agreement authorizes Time Warner Cable to engage in network management practices (*see* Dzujna Aff. Ex. B ¶ 6(a); Ex. C at 1), whether by sending "reset packets" or otherwise.  *See, e.g.*, *Worldspan, L.P.* v. *Orbitz, LLC*, No. 05-C-5386, 2006 WL 1069128, at *4 (N.D. Ill. Apr. 19, 2006) (defendant's access to plaintiff's computer was not "without authorization" since plaintiff granted defendant access to its computers by contract).

*Third*, the Complaint fails to allege "loss" in any way.  Paragraphs 40 and 41 allege only that Time Warner Cable's conduct causes "damage" without any explanation of what that "damage" allegedly consists of or how it is allegedly caused by TWC's actions.  The CFAA requires allegations of both "damage" and "loss."  *See* CFAA § 1030(a)(5)(C).  The CFAA defines "loss" as any "reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).  Plaintiff fails to plead sufficient facts to satisfy this element of her CFAA claim.

In *Nexans Wires S.A.* v. *Sark-USA, Inc.*, 319 F. Supp. 2d 468 (S.D.N.Y. 2004), *aff'd*, 166 Fed. Appx. 559 (2d Cir. 2006), the District Court held that, for the purposes of the CFAA, "loss" encompasses only the "cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted."  *Id.* at 475.  The Second Circuit af-

firmed, holding that the "plain language of the statute treats lost revenue as a different concept from incurred costs, and permits recovery of the former only where connected to an 'interruption in service.'" *Nexans Wires*, 166 Fed. Appx. at 562.  Here, the Complaint does not allege that Plaintiff has incurred any costs in investigating or remedying damage to her computer, or even that there has been any damage to her computer.  Nor does the Complaint allege that Plaintiff has incurred any losses because her computer's service was interrupted.  The Complaint therefore fails to allege "loss" within the meaning of the CFAA.  *See also Civic Center Motors, Ltd.* v. *Mason Street Import Cars, Ltd.*, 387 F. Supp. 2d 378, 382 (S.D.N.Y. 2005) (holding that losses that are not "the result of computer impairment or computer damage" are "not compensable 'losses' under the CFAA").

      B.      <u>Plaintiff's GBL § 349 Claim Must Be Dismissed</u>

Count II alleges that Time Warner Cable violated Section 349 of New York's General Business Law by representing that Time Warner Cable's Internet service provides an "always-on connection" that is "blazing fast" and is the "fastest, easiest way to get online," while at the same time engaging in the network management practices described above (and disclosed in the Subscriber Agreement and Acceptable Use Policy).  To make out a claim under GBL § 349, Plaintiff must plead and prove "three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman* v. *Chemical Bank*, 95 N.Y.2d 24, 29 (2000) (citations omitted)  Here, the Complaint fails to allege that Time Warner Cable's statements were misleading in a material way for several reasons.  First, the Complaint fails to allege that Ms. Fink's Internet access did not comport with Time Warner Cable's representations.  Nowhere does the Complaint allege that Ms. Fink's Internet access was not "always on," or was not "blaz-

ing fast," or was not the "fastest, easiest way to get online," whether because of Time Warner Cable's network management practices or otherwise.

Second, Ms. Fink's allegations that Time Warner Cable's representations were materially misleading because they were made without disclosing that Time Warner Cable engaged in network management must fail because Time Warner Cable disclosed in the Subscriber Agreement and Acceptable Use Policy that Time Warner Cable had the right to engage in network management practices and would do so under appropriate circumstances (*see supra*. p. 4). *See Shovak* v. *Long Island Commercial Bank*, 50 A.D.3d 1118, 1120 (2d Dep't 2008) (dismissing plaintiff's GBL 349 claim because business practice was fully disclosed).

Third, the allegedly false Time Warner Cable representations cited in the Complaint are in any event not actionable under GBL § 349 because they are merely puffery. *See Lacoff* v. *Buena Vista Publishing, Inc.*, 183 Misc. 2d. 600, 610 (Sup. Ct. N.Y. Co. 2000) (holding that "puffery or opinion" is not actionable under GBL § 349)  "Puffery is defined as exaggerated general statements that make no specific claims on which consumers could rely."  *Pelman* v. *McDonald's Corp.*, 237 F. Supp. 2d 512, 528 n.14 (S.D.N.Y. 2003)  Here, Time Warner Cable's assertions in advertising that its Road Runner service is "blazing fast" and the "fastest, easiest way to get online" so clearly meet that definition that dismissal at the motion to dismiss stage is appropriate.  Indeed, superlatives such as "fastest" and "easiest" are classic examples of puffery. *See Educational Sales Programs, Inc.* v. *Dreyfus Corp.*, 65 Misc. 2d 412, 417 (Sup. Ct. N.Y. Co. 1970) ("Just as the language of the sailor is punctuated by pithy expletives, so the language of the salesman is studded with superlatives and hyperbole.")  Count II should therefore be dismissed.

C.   <u>Plaintiff's Breach of Contract Claim Must Be Dismissed</u>

Count III alleges that Time Warner Cable breached its contract with Ms. Fink by engaging in network management.  As set forth above, notwithstanding Ms. Fink's conclusory allegation that "nothing in Defendant's Terms of Use indicates that the Defendant throttles traffic" (Complaint ¶ 18), Section 6(a) of the Subscriber Agreement expressly authorizes Time Warner Cable to engage in network management of the type that Ms. Fink here alleges to be improper:

> Additionally, TWC may use such tools and techniques as it determines appropriate in order to efficiently manage its network and to ensure a quality user experience for its subscribers ("Network Management Tools").  (Dzujna Aff. Ex. B ¶ 6(a))

Likewise, the Acceptable Use Policy also expressly authorizes Time Warner Cable to engage in the very conduct Plaintiff claims to be a breach of contract:

> The ISP Service may not be used in a manner that interferes with Operator's efficient operation of its facilities, the provision of services or the ability of others to utilize the ISP Service in a reasonable manner.  Operator may use various tools and techniques in order to efficiently manage its networks and to ensure compliance with this Acceptable Use Policy ("Network Management Tools"). These may include detecting malicious traffic patterns and preventing the distribution of viruses or other malicious code, and managing network resources through techniques such as *limiting the number of peer-to-peer sessions a user can conduct at the same time, limiting the aggregate bandwidth available for certain usage protocols such as peer-to-peer and newsgroups and such other Network Management Tools as Operator may from time to time determine appropriate*.  (Dzujna Aff. Ex. C at 1) (emphasis added)

On a motion to dismiss, a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference [or] matters of which judicial notice may be taken." *Chambers*, 282 F.3d at 153 (citation and internal quotation marks omitted); *see also Barron Partners, LP* v. *Lab 123, Inc.*, No. 07 Civ. 11135, 2008 WL 2902187, at *6-*7 (S.D.N.Y. July 25, 2008) (dismissing breach of contract claim based on the plain language of the contract even though the contract was not attached to the Amended Complaint).  It is therefore proper for the court to consider the "Terms of Use" referenced in the Complaint (*i.e.*, the Subscriber Agreement

-12-

and the Acceptable Use Policy), and the terms of those documents both trump Ms. Fink's con-

clusory and unsupported allegations about the "Terms of Use" and require dismissal of Count III.

Where the allegations in the complaint contradict the plain language of documents attached to or

referenced in the complaint, the language of the documents controls.   *See Steinberg*, 88

F. Supp. 2d at 300.

> D.      Plaintiff's Claims For Breach of Implied In Fact Contract and Breach
>         of the Covenant of Good Faith and Fair Dealing Must Be Dismissed

Count IV alleges two separate causes of action.  First, Count IV alleges that Ms. Fink and

Time Warner Cable entered into an "implied-in-fact contract" for "high-speed internet service,"

that Time Warner Cable breached by providing "'low-speed' Internet service."  Second, Count

IV alleges that Time Warner Cable's network management practices breached the implied cove-

nant of good faith and fair dealing.  Neither claim is sustainable.

Plaintiff's breach of "implied-in-fact" contract claim fails because New York law is clear

that "[a] contract may not be implied in fact from the conduct of the parties where it appears that

they intended to be bound only by a formal written agreement."  *DG & A Management Services,*

*LLC* v. *Securities Industry Ass'n Compliance and Legal Division*, 52 A.D.3d 922, 923 (3d Dep't

2008) (citation and internal quotation marks omitted)  Here, the parties' agreement makes clear,

through a merger clause, that there could be no contract — implied-in-fact or otherwise — out-

side of the parties' written agreement:

> This Agreement supersedes all previous written or oral agreements between TWC
> and me.  I am not entitled to rely on any oral or written statements by TWC's rep-
> resentatives relating to the subjects covered by these documents, whether made
> prior to the date of my Work Order or thereafter, and TWC will have no liability
> to me except in respect of its obligations as described in this Agreement and the
> other documents referred to above.  (Dzujna Aff. Ex. B ¶ 1(a))

A contract may not be implied in fact under such circumstances.  *Azimut-Benetti, S.p.A.* v. *Mag-*

*num Marine Corp.*, 55 A.D.3d. 483, 484-85 (1st Dep't 2008) ("[A] contract cannot be implied

where there is an express contract covering the same subject matter.") (citation omitted).  Ms. Fink's claim for breach of an implied-in-fact contract should therefore be dismissed.

Ms. Fink's breach of the duty of good faith claim is similarly unavailing.  It is well settled in New York that the implied covenant of good faith and fair dealing is breached only "when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement."  *Jaffe* v. *Paramount Communications, Inc.*, 222 A.D.2d 17, 22-23 (1st Dep't 1996); *accord Skillgames, LLC* v. *Brody*, 1 A.D.3d 247, 252 (1st Dep't 2003).  Accordingly, it follows that when a party acts in a manner expressly authorized by contract, there can be no breach of the duty of good faith because the other party is not deprived of the benefits under their arrangement.  *Netrix Leasing LLC* v. *K.S. Telecom, Inc.*, No. 00 Civ. 3375, 2001 WL 228362, at *9 (S.D.N.Y. Mar. 7, 2001) (Wood, J.) (Duty of good faith "can not be violated when a party is exercising its rights under the contract."); *accord Yucyco, Ltd.* v. *Republic of Slovenia*, No. 96 Civ. 4274, 1999 WL 169530, at *3 (S.D.N.Y. Mar. 25, 1999) (Chin, J).

As set forth above, the contract between the parties — the Subscriber Agreement and Acceptable Use Policy — expressly authorizes Time Warner Cable to engage in network management practices.  (*See supra*. p. 4)  Ms. Fink's claim for breach of the duty of good faith should therefore be dismissed.  *Netrix Leasing LLC*, 2001 WL 228362, at *9; *Yucyco, Ltd.*, 1999 WL 169530, at *3.

### E.   Plaintiff's Fraud And Misrepresentation Claims Must Be Dismissed

Count V alleges that Time Warner Cable fraudulently induced Ms. Fink into purchasing Time Warner Cable's internet service.  The claim must be dismissed because Time Warner Cable fully disclosed its network management practices to Ms. Fink in the Subscriber Agreement and Acceptable Use Policy.  The law is clear that adequate disclosure defeats a fraud claim.  *See*

-14-

*Rudolph* v. *Tucerek*, 240 A.D.2d 935, 938 (3d Dep't 1997) (dismissing complaint because relevant information "was fully disclosed to plaintiffs")  Here, as set forth above, Time Warner Cable's network management practices are fully disclosed to Ms. Fink in the Subscriber Agreement and the Acceptable Use Policy.  (*See supra*. p. 4)

Indeed, not only does the contract between Time Warner Cable and Ms. Fink disclose and authorize Time Warner Cable's general network management practices, but it specifies that Time Warner Cable may take steps to limit "protocols such as peer-to-peer" — the precise conduct of which Ms. Fink complains.  (Complaint ¶¶ 20-22)  Count V should therefore be dismissed.

F.    Plaintiff's Unjust Enrichment Claim Must Be Dismissed

Count VI alleges that Time Warner Cable has been unjustly enriched by charging Ms. Fink for "a high-speed Internet service that [Time Warner Cable] did not provide."  (Complaint ¶ 66)  The claim should be dismissed because it is duplicative of Ms. Fink's breach of contract claim.  *See Cooper, Bamundo, Hecht & Longworth, LLP* v. *Kuczinski*, 14 A.D.3d 644, 645 (2d Dep't 2005)  Ms. Fink's unjust enrichment claim alleges nothing more than that it was unjust to charge for "high-speed" Internet service while simultaneously slowing that service down through network management.  As such, it is no different than Ms. Fink's claim that Time Warner Cable breached its contract by engaging in network management.  Both "causes of action seek damages for events arising from the same subject matter that is governed by an enforceable contract," *Bettan* v. *Geico General Insurance Co.*, 296 A.D.2d 469, 470 (2d Dep't 2002), and Ms. Fink's unjust enrichment claim must therefore be dismissed.  *Id.*

Alternatively, the claim should also be dismissed because Ms. Fink cannot sustain her allegations that she was not adequately compensated for the benefit she conferred on Time Warner Cable.  "To state a cause of action for unjust enrichment, a plaintiff must allege [(i)] that it con-

ferred a benefit upon the defendant, and [(ii)] that the defendant will obtain such benefit without adequately compensating plaintiff therefor"  *Smith* v. *Chase Manhattan Bank USA, N.A.*, 293 A.D.2d 598, 600 (2d Dep't 2002) (citation and internal quotation marks omitted)  Here, Ms. Fink does not deny that she received Internet services in exchange for the payments she made to Time Warner Cable.  Instead, she alleges that the Internet services she received were not "adequate" compensation because she expected "high-speed" Internet service but received something less because of Time Warner Cable's network management practices.  But, as set forth above, Time Warner Cable fully disclosed its network management practices to Ms. Fink.  (*See supra*. p. 4) Ms. Fink knew exactly what she was paying for, and that was exactly what she received.  Count VI should therefore be dismissed.  *See Judge Rotenberg Educational Center* v. *Maul*, 230 A.D. 2d. 278, 281 (3d Dep't 1997) (dismissing claim for unjust enrichment where plaintiff had advance notice of the value of the services).

## CONCLUSION

For the reasons set forth above, the Complaint should be dismissed for failure to state a claim upon which relief may be granted.

Dated: New York, New York
January 23, 2009

Respectfully submitted,

__/s/ Jonathan D. Thier_____
Jonathan D. Thier (JT-1013)
Joel Kurtzberg (JK-1552)
Y. Aryeh Haselkorn (YH-2000)

Cahill Gordon & Reindel LLP
80 Pine Street
New York, New York  10005
(212) 701-3000

*Counsel for Defendant Time Warner NYC Cable LLC.*