**REESE RICHMAN LLP**
Michael R. Reese
mreese@reeserichman.com
Kim E. Richman
krichman@reeserichman.com
Belinda L. Williams
bwilliams@reeserichman.com
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 572-4272

- and -

**MILBERG LLP**
Sanford P. Dumain
sdumain@milberg.com
Peter E. Seidman
pseidman@milberg.com
Joshua E. Keller
jkeller@milberg.com
One Pennsylvania Plaza
New York, New York 10119
Telephone:  (212) 594-5300
Facsimile:  (212) 868-1229

*Counsel for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JESSICA FINK AND BRETT NOIA, on behalf of themselves  and all others similarly situated,<br><br>          Plaintiffs,<br><br>  vs.<br><br>TIME WARNER CABLE,<br><br>          Defendant. | Case No.  08 CIV 9628 (LTS)<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT AND PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................................................1

STATEMENT OF FACTS....................................................................................................3

ARGUMENT.......................................................................................................................8

I.  SUMMARY JUDGMENT MUST BE DENIED BECAUSE DEFENDANT HAS
    FAILED TO SUBMIT SUFFICIENT EVIDENCE..................................................8

    A.  The Applicable Standard.....................................................................................8

    B.  Disputed Issues of Fact Preclude Summary Judgment on Plaintiffs' Contract Claims.9

        1.  The Work Orders Did Not Authorize Defendant to Provide Inferior Service....9

        2.  The Alleged Contracts Are Vague and Ambiguous.........................................12

    C.  Disputed Issues of Fact Preclude Summary Judgment on Plaintiffs' Breach of
    Implied-in-Fact Contract and Breach of the Covenant of Good Faith and Fair Dealing
    Claims...............................................................................................................14

    D. Disputed Issues of Fact Preclude Summary Judgment on Plaintiffs' CFAA Claims...15

    E.  Disputed Issues of Fact Preclude Summary Judgment on Plaintiffs' Consumer Law
    Claims...............................................................................................................16

    F.  Summary Judgment on Plaintiffs' Deceit Fraud and/or Misrepresentation Claim
    Is Not Appropriate.............................................................................................18

    G.  Summary Judgment on Plaintiffs' Unjust Enrichment Claim Is Not Appropriate......18

    H.  Summary Judgment on Plaintiff Noia's Injunctive Relief Claims Is Improper...........19

II. JUDGMENT ON THE PLEADINGS ON COUNTS I-IV AND VIII-VI IS IMPROPER
    BECAUSE PLAINTIFFS PLEAD FACIALLY PLAUSIBLE CLAIMS..............................20

    A.  The Applicable Standard....................................................................................19

    B.  Dismissal Of Plaintiff's CFAA Claims Is Not Proper................................................20

        1.  The Complaint Sufficiently Alleges Damage................................................21

        2.  The Complaint Sufficiently Alleges Access....................................................22

C.  Dismissal of Plaintiffs' Consumer Law Claims Is Not Proper....................................23

D.  Dismissal of Plaintiffs' Breach of Contract Claim Is Not Proper..............................24

E.  Dismissal of Plaintiffs' Unjust Enrichment Claim Is Not Proper...............................24

CONCLUSION.........................................................................................................................25

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page**

*America Online, Inc. v. National Health Care Dis., Inc.*,
121 F.Supp.2d 1255 (N.D. Iowa 2000)........................................................................21,22

*Anderson* v. *Liberty Lobby, Inc.*,
477 U.S. 242, 106 S.Ct. 2505 (1986)........................... ...................................................9

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009).............................................. ...................................................20

*Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*, No. 03-civ-15 RWS,
2007 U.S. Dist. LEXIS 42639 (S.D.N.Y. June 11, 2007).................................................25

*Boxberger v. New York, New Haven & Hartford R.R.*,
237 N.Y. 75 (1923)........................................................................................................12

*Cleveland v. Caplaw Enters.*,
448 F.3d 518 (2d Cir. 2006)........................................................................................19,20

*Davis v. Southern Bell Tel. & Tel. Co.*, No. 89-civ-2839,
1994 U.S. Dist. LEXIS 13257 (S.D. Fla. 1994)..............................................................12

*E360Insight, LLC v. Comcast Corp.*,
546 F.Supp.2d 605 (N.D.Ill. 2008)................................................................................22

*Farrington v. Harlem Sav. Bank*,
280 N.Y. 1 (1939)........................................................................................................10

*Fleming v. Ponziani*,
24 N.Y.2d 105 (1969)....................................................................................................12

*Goshen v. Mutual Life Ins. Co. of N.Y.*,
98 N.Y.2d 314 (2002)....................................................................................................23

*Griffin Bros., Inc. v. Yatto*,
68 A.D.2d 1009 (3d Dep't 1979)....................................................................................24

*Gross v. Empire Healthchoice Assurance, Inc.*,
2007 N.Y. Misc. LEXIS 4962 (Sup. Ct. N.Y. County 2007)............................................15

*Hetchkop v. Woodlawn at Grassmere*,
116 F.3d 28 (2d Cir. 1997)............................................................................................10

*Jernow v. Wendy's International, Inc.*, No. 07-civ- 3471 (LTS),
    2007 U.S. Dist. LEXIS 85104 (S.D.N.Y. 2007) (Swain, J.)....................................14,15,16

*Judge Rotenberg Educ. Ctr. v. Maul*,
    230 A.D.2d 278 (3d Dep't 1997)......................................................................................19

*Kalow & Springnut, LLP v. Commence Corp.*, No. 07-civ-3442,
    2009 U.S.Dist. LEXIS 320 (D.N.J. Jan. 5, 2009).............................................................21

*Lafarge N. Am., Inc. v. Discovery Group L.L.C.*,
    574 F.3d 973 (8th Cir. 2009)............................................................................................18

*Peter L. Leepson, P.C. v. Allan Riley Co.*, No. 04-civ-3720 (LTS),
    2006 U.S. Dist. LEXIS 52875 (S.D.N.Y. 2006) (Swain, J.)...............................................14

*Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*,
    41 A.D.3d 269 (1st Dep't 2007).......................................................................................15

*Mercer Capital, Ltd. v U.S. Dry Cleaning Corp.*, No. 08-civ-5763 (LTS),
    2009 U.S. Dist. LEXIS 62059(S.D.N.Y. July 21, 2009) (Swain, J.)............................8,14

*Mintz v. American Tax Relief, LLC*,
    16 Misc.3d 517 (Sup. Ct. N.Y. County 2007)...........................................................23,24

*Morris v. Lerner Assocs.*, No. 09-civ-2479,
    2010 U.S.Dist. LEXIS 6115 (E.D.N.Y.  Jan. 26, 2010)....................................................20

*MPC Containment Sys. Ltd. v. Moreland*, No. 05-civ-6973,
    2008 U.S.Dist. LEXIS 60546 (N.D. Ill. Jul. 23, 2008).....................................................22

*Oce N. Am., Inc. v. Caputo*,
    416 F.Supp. 2d 1321 (S.D. Fla. 2006).......................................................................10,11

*Patrick Patterson Custom Homes*,
    586 F.Supp.2d 1026 (N.D.Ill. 2008).................................................................................21

*Rabin v. MONY Life Ins. Co.*, No. 06-civ-775,
    2007 U.S.Dist. LEXIS 18437 (S.D.N.Y. Mar. 8, 2007)....................................................16

*Register.com, Inc. v. Verio, Inc.*,
    126 F.Supp.2d 238 (S.D.N.Y. 2000).................................................................................21

*Rodriguez v. It's Just Lunch Int'l*, case no. 07-civ-9227 (KNF),
    2010 U.S. Dist. LEXIS 16622 (S.D.N.Y. Feb. 23, 2010)..................................................24

*Shovak v. Long Island Commercial Bank*,
    50 A.D.3d 1118 (2d Dep't 2008)....................................................................17

*State of N.Y. v. Stevens*,
    130 Misc.2d 790 (Sup. Ct. 1985)..................................................................23

*Stickrath v. Globalstar, Inc.*,
    527 F. Supp. 2d 992 (N.D. Cal. 2007)..........................................................19

*Southwest Airlines Co. v. BoardFirst, L.L.C.*, No. 3:06-civ-0891,
    2007 U.S. Dist. LEXIS 96230 (N.D.Tex. Sept. 12, 2007)............................22

*Teller v. Bill Hayes, Ltd.*,
    213 A.D.2d 141 (2d Dep't 1995)..................................................................16

*Topps Co., Inc. v. Cadbury Stani S.A.I.C.*,
    526 F.3d 63 (2d Cir. 2008)..........................................................................13

*VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*,
    594 F. Supp. 2d 334 (S.D.N.Y. 2008) ………...............................................24

*Verizon Directories Corp. v. Yellow Book U.S. of Am., Inc.*,
    309 F.Supp.2d 401 (E.D.N.Y. 2004).............................................................23

*Wilcox v. American Tel. and Tel. Co.*,
    176 N.Y. 115 (1903)......................................................................................10

*Williams v. Gerber Prods. Co.*,
    523 F.3d 934 (9th Cir. 2008)................................................................16, 24

*Wyeth v. King Pharm., Inc.*,
    396 F.Supp.2d 280 (E.D.N.Y. 2005).............................................................18

*Yesner v. Spinner*,
    765 F.Supp. 48(E.D.N.Y. 1991).....................................................................18

## OTHER AUTHORITIES

18 U.S.C. §1030(e)(8)............................................................................................21

Fed.R.Civ.P. 15(a)................................................................................................20

Orin S. Kerr, *Cybercrime's Scope: Interpreting "Access" and "Authorization"*
    *in Computer Misuse Statutes*, 78 N.Y.U.L.Rev. 1596, 1648 (Nov. 2003)......... 22

Plaintiffs Jessica Fink and Brett Noia ("Plaintiffs") submit this Memorandum of Law in opposition to the Motion of defendant Time Warner Cable ("Defendant" or "Time Warner") for Summary Judgment With Respect to All Counts or, in the alternative, for Judgment on the Pleadings With Respect to Counts I-V and VIII-XI of the First Amended Class Action Complaint (Dkt. 38)("Defendant's Motions" or "Motions").  As demonstrated below, numerous disputed issues of material fact preclude judgment as a matter of law on all Plaintiffs' claims. Accordingly, Defendant's Motions must be denied in its entirety.

## **INTRODUCTION**

This case represents a classic bait and switch.  To induce consumers to pay a premium for its product, Defendant repeatedly, and without qualification, promised uninterrupted, high-speed Internet service.  Then, because Defendant's infrastructure lacked the capacity to accommodate the demands of all of the subscribers it had lured with its false promises of high-speed service, Defendant furtively took measures to impede subscribers' Internet access.  These measures, which are known in the industry as "throttling," resulted in limitations on service that belied Defendant's unqualified promises of high-speed, uninterrupted service.  Moreover, these furtive measures included conduct that itself is also deceptive --- the forgery of "reset packets" that, unbeknownst to subscribers, conveyed false messages regarding the status of their computers.

Defendant tries to avoid liability for its deception and lies by claiming that Plaintiffs agreed to and authorized Time Warner to provide service that was vastly inferior to that which Defendant had promised. As set forth herein, Defendant had the burden on this motion of showing that this proposition is undisputed, and it has not done so.

Defendant's Motion is almost exclusively premised on Defendant's claim that Plaintiffs' signatures on work orders expressly authorized Time Warner to provide service inferior to that

which it had promised.  But Plaintiffs signed the work orders believing they were just that, work orders, the sole purpose of which was to authorize vendor performance of a discrete task --- in this case, the installation of equipment required for Internet service.

Defendant nevertheless claims that the fine print at the bottom of the work orders effectively incorporates "Time Warner's Residential Service Subscriber Agreement" (hereinafter "Subscriber Agreement"), which is buried in the back of a document entitled "Welcome Kit", and that this Subscriber Agreement, in turn, incorporates an "Operator Acceptable Use Policy" (hereafter "Use Policy") remotely located on the Internet.  Defendant claims that Plaintiffs "expressly authorized" the fine-print in the Subscriber Agreement and Use Policy and that this fine-print overrides Time Warner's very prominent, broad and specific promises of uninterrupted, high-speed Internet access. The law is clear, however, that Defendant cannot require its subscribers to sign a work order, apparently for the sole purpose of having their Internet service equipment installed, and then claim that the work order is really something else entirely --- an agreement to complex and arcane fine-print terms buried in other documents located elsewhere.  Moreover, Plaintiffs did not receive the so-called Subscriber Agreement and Defendant has provided no competent or admissible evidence that it sent or otherwise provided the Subscriber Agreement to Plaintiffs.  And even if Time Warner had told Plaintiffs about the Subscriber Agreement and provided it to them, the disclosures that Defendant now claims allow them to impede Internet access are wholly deficient under any standard and ultimately meaningless in light of Defendant's more prominent claims of high-speed, always-on service.

Defendant in the alternative seeks dismissal of Counts I - V and Counts XIII - XI on the pleadings pursuant to Fed. R. Civ. P. 12(c).  That Motion should be denied as well.  First, Defendant's argument that the Computer Fraud and Abuse Act ("CFAA") claims are

inadequately plead is belied by the facts and law.  The sending of forged reset packets from Plaintiffs' computers and the interruption and corruption of data flow alleged here are precisely the types of improper access and damage the CFAA was designed to prevent.

Second, Defendant argues that the statutory fraud claims (Counts IV, IX, X and XI) should be dismissed, claiming its promises of high-speed, uninterrupted service are not material and constitute "mere puffery."  However, many of Defendant's statements were quite specific (*e.g.* "service 7 times faster than 768 DSL") and even its broader statements (*e.g.* "Blazing Fast") identify specific attributes that are especially important in the context of Internet service.  In fact, the highest court of New York state has recognized that these very type of claims regarding the quality of Internet service are actionable.

As set forth herein, Defendant has not come close to carrying its burden on either of its Motions.  Accordingly, the Motions should be denied in their entirety.

### STATEMENT OF FACTS

Defendant sells Internet service to consumers.  (Declaration of Michael R. Reese in Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment and to Dismiss ("Reese Decl."), Exhibit 1 (Answer of Defendant Time Warner Cable Inc. to Plaintiffs' First Amended Complaint) at 19; FAC ¶¶ 2, 18, 19).[1]  In order to induce consumers to pay a premium price for its product, Defendant markets its product as an uninterrupted "high speed online Internet service."  (Reese Decl., Ex. 1 at 2, 19; Ex. 2; FAC ¶¶ 20, 21).  Defendant underscores the "high speed online" aspect of its service with its logo, the Road Runner bird, a cartoon character widely known for its unceasing high speed, and through a number of representations,

---

[1] Citations to "FAC ¶__" refer to paragraphs in the amended complaint filed in the above-captioned action on August 7, 2009 (the "Complaint").

including, but not limited to, descriptions such as an "always on connection," "blazing fast" and "the easiest, fastest way to get online."  (Reese Decl., Ex. 1 at 2; FAC ¶ 20).

Unbeknownst to Plaintiffs, Defendant secretly throttled Plaintiffs' Internet access, causing slow and interrupted service that was a far cry from the "high-speed" "always-on" connection that Defendant promised.    (Reese Decl., Ex. 3 at 18:20-23, FAC ¶¶ 19-36). Defendant accomplished this by, among other means, secretly forging the identity of its subscribers' computers.  Improperly posing as the subscriber's computer, Defendant sent electrical signals (known as forged TCP "reset packets") that accessed the subscriber's computer. *Id.*  This process affects both the software and hardware of consumers' computers.  *Id.*  Plaintiffs Fink and Noia both subscribed to Time Warner Cable's Internet service and were victims of this practice.  (Reese Decl. Ex. 4 (Affidavit of Jessica Fink); Ex. 5 (Affidavit of Brett Noia)).

Nowhere in its marketing or advertising of its Internet service to Plaintiffs did Defendant disclose that it would throttle Internet traffic. (Reese Decl., Exs. 4, 5).  Rather, Defendant's marketing of its product led consumers to believe the opposite, *i.e.* that they were receiving high-speed, unfettered Internet access.  (Reese Decl., Exs. 1 at 2; 4, ¶ 2 and 5, ¶ 2).

Defendant's contention that Plaintiffs agreed to accept service that was of a quality significantly inferior to that promised by Defendant is based solely on Defendant's claim that Plaintiffs signed one-page documents entitled work orders that Defendant submitted in support of its Motion ("Work Orders").  (Affidavit of Frank McKeon (Dkt. 42) ("McKeon Aff.") at ¶¶ 2, 3; Declaration of Satenik Abeshyan (Dkt. 40) ("Abeshyan Aff.") at ¶¶ 2, 3).   Nowhere on the Work Orders did it state that the Work Orders constituted a part of a contract.  *Id.*  Defendant itself, in this litigation and internally, consistently characterizes these documents as "work orders", not contracts.  In this regard Satenik Abeshyan, a Time Warner senior executive,

4

testified: "Work orders are, when a job is scheduled, a work order is printed for the technician to take with it to the customer's home as guidance what the job requires." (Reese Decl. Ex. 6 (transcript of deposition of Satenik Abeshyan) ("Abeshyan Tr.") at 22:12-15; Reese Decl. Ex. 7 (transcript of deposition of Frank McKeon) ("McKeon Tr.") at 61:21-22) (a work order is "a document that addresses a particular install or service happening").

Nor did the Time Warner installers who had the subscribers sign the work orders tell them that the work orders purportedly constituted part of a contract that also included a complex subscriber agreement and user policy, both of which are located elsewhere and in separate places (a "Welcome Kit" with respect to the subscriber agreement, and on Time Warner's website with respect to the user policy). (Reese Decl. Exs. 4, 5, and 8 (Affidavit of Time Warner Cable Internet installer Carlos Quintanilla)("Quintanilla Aff.")). Defendant did not require its installers to explain that the Work Order constituted a contract between the customer and Time Warner Cable. (Reese Decl., Ex. H, Quintanilla Aff. at ¶4). Even Defendant's own installers did not believe that the Work Order constituted a contract between the consumers and Time Warner. (*Id.* at ¶¶3, 4). As stated by Mr. Quintanilla, a former Time Warner installer of Internet service:

> I was never informed by anyone at Time Warner Cable…that the work order that was signed at the time of installation was supposed to be a contract between Time Warner and the customer. Instead, my understanding is that the signed work order represented an acknowledgement that I perform the work as written on the work order…I did not understand the work order to constitute a contract….I did not believe the work order to constitute a contract.

(*Id.* at ¶¶3, 4).

Plaintiffs Noia and Fink would not have signed the Work Orders had they been informed that the Work Orders constituted part of a contract that limited the high-speed Internet service that Defendant had promised them. (Reese Decl., Exs. 4, ¶ 6 and 5, ¶ 6).

5

Defendant claims in argument that the terms of the alleged contract were partially included in booklets entitled Welcome Kits.  Neither Plaintiff Noia nor Plaintiff Fink believe that he or she received any Welcome Kits or otherwise received the Subscriber Agreements that Defendant claims are contained within the Welcome Kits.[2]  (*Id.* at Exs. 4, ¶ 6 and 5, ¶ 6). Indeed, Time Warner Cable installers routinely failed to provide any Welcome Kits to customers.  (Reese Decl. Ex. 8 (Quintanilla Aff.), ¶ 6) (***I provided Welcome Kits to fewer than two percent of the customers for whom I installed Time Warner Cable***); (Reese Decl. Ex. 7 (McKeon Tr.) at 53:6-10; 54:10-12).

Defendant claims that the Welcome Kits contain language regarding "network management tools" that disclose Defendant could impede a consumer's use of the Internet. However, the Welcome Kit submitted by Defendant as Exhibit C to the Abeshyan Affidavit that Defendant claims it gave to Plaintiff Noia ***does not*** contain any such language.  (Abeshyan Aff., Ex. C; Reese Decl. Ex. 6 (Abeshyan Tr.) at 59:25-60:13).

With respect to the Welcome Kits that actually contain language regarding network management tools, the layout is misleading.  Specifically, the language pertaining to network management tools is not found in front of the document, instead it is buried in the back. (Abeshyan Aff. Ex. D at p. 35).  The more prominent sections in the front of these Welcome Kits contain language highlighting Time Warner's promise of high-speed Internet that is superior to that of its competitors.  For example, the Welcome Kit attached as Exhibit D to the Abesyhan Affidavit states on the cover page that the Internet service is "High Speed" and includes a picture

---

[2]   In his Affidavit, Frank McKeon claims a Subscriber Agreement was mailed to Ms. Fink. During his deposition, Mr. McKeon contradicted this claim, testifying that he was unaware of any record demonstrating the subscriber agreement was, in fact, mailed to Ms. Fink, or provided to her by the Time Warner installer.  (Reese Decl. Ex. 7 (McKeon Tr.) at 40:5-10; 52:25-53:5).

of the Road Runner bird – an animal known for relentless speed; on page 1 that the Internet service is "High Speed" and "blazing-fast"; on page 3 that the service is "High Speed" and "7 times faster than 768K DSL"; and on page 4 that the service is "blazing-fast" and provides a "reliable connection."  (Abeshyan Aff. Ex. D at 1, 3, 4);  (*see also* McKeon Aff. Ex. C at p. 2 ("Faster than DSL, our high-speed Internet service lets you explore the web in a flash with a connection that never holds you back."); p. 3 ("High Speed Online: High speed.  No hassles"); p. 3 ("Enjoy a constant connection"); p. 5 ("Acclaimed and reliable service")).

        The network management language relied upon by Defendant states that Time Warner "may use technical means, including but not limited to suspending or reducing the speed of my HSD Service, to ensure compliance with its Terms of Use" in "order to ensure a quality user experience."  (Abeshyan Aff. Ex. 6 at 35).  The Terms of Use referenced by Defendant prohibit such illegal activity as transmission of "child pornography"; content that "violate[s] or infringe on the rights or dignity of others"; "illegal gambling"; "pyramid or other investment schemes" or "forge[ry] [of] any TCP/IP packet header."  (Abeshyan Aff., Ex. E).  The Terms of Use ***do not*** prohibit the legitimate types of use of the Internet that Defendant in fact throttled.  (*Id.*)

        Time Warner instructed its installers "to tell customers that slow and unreliable Time Warner Cable service resulted from factors other than Time Warner's Cable technology, such as the customer's computer, network congestion, or customer overuse, and not due to the technology used by Time Warner Cable."  (Reese Decl. Ex. 8 (Quintanilla Aff.), ¶ 3).

        Defendant claims that certain, but not all, of the Welcome Kits incorporated by reference a Use Policy by listing a web address in the Welcome Kit that links to the Use Policy.  However, the address for the Use Policy stated in the Welcome Kit does not, in fact, lead to a webpage that contains the Use Policy.  Instead, the address takes one to a webpage that states the following:

**THE PAGE CANNOT BE FOUND.** (Reese Decl. Ex. 7 (McKeon Tr.) at 48:2-10). Additionally, neither Plaintiff Fink nor Noia ever viewed the Use Policy or even knew of its existence. (Reese Decl, Exs. 4, 5).

<u>**ARGUMENT**</u>

## I. SUMMARY JUDGMENT MUST BE DENIED BECAUSE DEFENDANT HAS FAILED TO SUBMIT SUFFICIENT EVIDENCE

### A. <u>The Applicable Standard</u>

Summary judgment is warranted only if "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In deciding a summary judgment motion pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court must accept the nonmoving party's evidence as true and all justifiable inferences are to be drawn in that party's favor." *Mercer Capital, Ltd. v U.S. Dry Cleaning Corp.*, No. 08-civ-5763 (LTS), 2009 U.S. Dist. LEXIS 62059, at *21 (S.D.N.Y. July 21, 2009) quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). "The movant 'must satisfy both the initial burden of production on the summary judgment motion – by showing that no genuine dispute exists as to any material fact – and the ultimate burden of persuasion on the claim [or defense] – by showing that it would be entitled to a directed verdict at trial.'" *Yarbrough v. Garrett*, 579 F.Supp.2d 856, 867 (E.D.Mich. 2008). Here, the record demonstrates that Defendant has failed to carry its initial burden of production. Defendant's Motion for summary judgment must be denied for this reason alone. Additionally, Plaintiffs have submitted evidence demonstrating issues of triable facts. For this separate reason, Defendant's Motion must be denied.[3]

---

[3] Even if the movant satisfies its burden of production, the non-moving party can still defeat a motion for summary judgment by presenting evidence sufficient to create a genuine issue of material fact – *i.e* "evidence…such that a reasonable jury could return a verdict for the non-

**B.  Disputed Issues of Fact Preclude Summary Judgment on the Contract Claims**

Defendant's entire summary judgment motion – with the exception of its arguments regarding Mr. Noia's injunctive relief claims – rest solely on the claim that Plaintiffs "expressly authorized" the throttling practice at issue.  *See* Memorandum of Law in Support of Time Warner Cable's (I) Motion for Summary Judgment and (II) Partial Motion for Judgment on the Pleadings. (Dkt. 39) ("Def. Mem.") at 7-16.  As seen below, Defendant is wrong.

**1.  The Work Orders Did Not Authorize Defendant to Provide Inferior Service.**

Defendant contends that the one-page document it presented to each of the Plaintiffs ***as "work orders"*** are, instead, contracts incorporating by reference arcane provisions whereby Plaintiffs purportedly "expressly authorized" the throttling practices at issue.  Def. Mtn. at 1-16. This argument does not withstand scrutiny.  A work order is just that – an order for work to be performed (*i.e.* installation of the Internet equipment), and nothing else.  Plaintiffs signed the work orders believing they had to if they wanted the Internet service installed.  They did not, nor reasonably would have believed, that they were agreeing to be bound by terms found nowhere on the face of the document.  Reese Decl., Exs. 4, ¶ 3 and 5, ¶ 3.

The undisputed record confirms Plaintiffs' understanding.  As sworn to by a former Time Warner Internet installer in an affidavit submitted with Plaintiffs' Opposition:  "I was never informed by anyone at Time Warner Cable…or by anyone else, that the work order that was signed at the time of installation was supposed to be a contract between Time Warner Cable and the customer…I did not believe the work order to constitute a contract."  Reese Decl. Ex. 8. Moreover, Plaintiffs' Affidavits state: "[n]either the cable installer nor anyone else ever told me

---

moving party for a jury to return a verdict for that party."  *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

that my signature on the work order constituted a contract between me and Time Warner for anything other than installation and/or activation of the Road Runner Internet service equipment." (Reese Decl. Exs. 4, 5). Plaintiffs also would not have signed the work orders had they been informed that the work order constituted part of contract that limited the high-speed Internet service that Defendant had promised them. (Reese Decl., Exs. 4, 5). Plaintiffs also deny "ever having received a Welcome Kit or Subscriber Agreement from Time Warner." *Id.*[4]

Because Defendant presented the documents to Plaintiffs as work orders, because the document looked like work orders, and because Plaintiffs in fact believed that the documents were work orders, the alleged contractual provisions located elsewhere that Defendant seeks to impose are unenforceable because Plaintiffs' purported assent to them were obtained by "[f]raud in the execution." *See Oce N. Am., Inc. v. Caputo*, 416 F.Supp. 2d 1321, 1328 (S.D. Fla. 2006) ("[f]raud in the execution of a contract … renders a contract void") (citing *Langley v FDIC*, 484 U.S. 86, 93-94, 108 S.Ct. 396 (1987) (fraud in the execution is "the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents").[5] *Oce* is on

---

[4] Defendant has not presented any evidence showing that it required its installers to notify subscribers that the work order was a contract or that it bound Plaintiffs to the terms of the Subscriber Agreement and Use Policy. Indeed, the testimony of Defendant's own installer demonstrates quite the contrary. (Reese Decl., Ex. 8). Nor has Defendant presented any evidence establishing that it "routinely provided" Subscriber Agreements to subscribers or that it "separately provided" the Subscriber Agreement to Plaintiffs. In fact, the deposition testimony of Defendant's employees demonstrates this was not the case and, thus, corroborates Plaintiffs' evidence. (Reese Decl. Ex. 7, (McKeon Tr.) at 40:5-10; 52:25-53:5; Reese Decl. Ex. 6 (Abeyshan Tr.) at 69:17-25).

[5] "Fraud in the execution occurs where there is a 'misrepresentation as to the character or essential terms of a proposed contract,' and a party signs without knowing or having a reasonable opportunity to know of its character or essential terms.'" *Hetchkop v. Woodlawn at Grassmere Inc.*, 116 F.3d 28, 32 (2d Cir. 1997). The law is that where, as here, an alleged contract has been formed in this manner, defrauded parties, such as Plaintiffs, are not bound by that contract. *Id.*; *see also Farrington v. Harlem Sav. Bank*, 280 N.Y. 1 (1939) (general release unenforceable

point.   In *Oce*, the plaintiff corporation had presented the defendant employee with an Award Certificate granting him the option to participate in a stock plan, which he signed.   The Certificate stated, "Awardee acknowledges that a copy of the Plan and a summary thereof have been provided to the Awardee … the Awardee has read the Plan and this Award Certificate and understand [*sic*] the terms and conditions contained therein and … will abide by the obligations of the confidentiality and non-competition … set forth in the Plan."   *Id.* at 1324.   The Plan included an eleven-page Appendix which contained non-competition and nondisclosure provisions prohibiting the defendant from working for the plaintiff's competitors for a two-year period.   After the defendant left the plaintiff and began working for one of the plaintiff's competitors, the plaintiff sought a preliminary injunction alleging breach, contending that the defendant "signed the Award Certificate acknowledging receipt of the Plan and compliance with its non-compete and nondisclosure provisions."   *Id.*   The court denied the preliminary injunction sought by the plaintiff, opining:

> Defendant contends that he was misled as to the contents of the Plan and signed an instrument different from what he understood it to be. Defendant asserts that he was provided with the Award Certificate only, not a copy of the Plan, and later upon requesting the Plan was given only the Plan Highlights which describe only the stock forfeiture aspects of an non-competition provisions, misleading him further as to his obligations under the Agreement.   The Certificate was presented in the context of a benefits package, with the only one reference to non-competition obligations found in the text of the Award Certificate itself with no further explanation.   These factors caused Caputo to sign the contract "without true knowledge of it true nature or contents."

*Id.* at 1328.

---

where defendant misrepresented release to be a receipt for money received); *Wilcox v. American Tel. and Tel. Co.*, 176 N.Y. 115 (1903) (reversing dismissal of action for trespass where defendant allegedly obtained plaintiff's signature on an easement by telling him the easement was a receipt for work performed).

This case stands on all fours with *Oce*.   As in *Oce*, Defendant Time Warner misled Plaintiffs as to the nature of the documents Plaintiffs were signing.   Like the Award Certificate in *Oce*, the work orders signed by Plaintiffs referred to other documents that were neither attached nor explained and provided to Plaintiffs.   And, as in *Oce*, Plaintiffs here were deceived into signing a document fundamentally different from the document that Defendant now claims it to be. Defendant cannot rebut these facts.[6]   Accordingly, summary judgment must be denied.[7]

### 2.  <u>The Alleged Contracts Are Vague and Ambiguous.</u>

The language Defendant says fully and adequately disclosed the throttling practices at issue is in technical jargon in paragraph 6(a) of some, but not all, of the Subscriber Agreements,[8]

---

[6]  Even if Plaintiffs believed that the work orders were a contract embracing additional terms – which they did not – the purported authorizations contained therein are of no effect because Plaintiffs' signatures on the purported contract were fraudulently induced by Defendants' misrepresentations regarding the contract terms.  Defendant repeatedly represented that it would provide uninterrupted, high-speed Internet service.  When Plaintiffs signed the work orders, they did not know, or have reason to know, that Defendant would not uphold these promises and Plaintiffs relied on these representations in agreeing to pay the subscriber fee.  (Reese Decl. Ex. 4, ¶2, Ex. 5, ¶ 2).  Defendant, therefore cannot now enforce a document that contains contrary terms.  *Davis v. Southern Bell Tel. & Tel. Co.*, No. 89-civ-2839, 1994 U.S. Dist. LEXIS 13257, at *76-77 (S.D. Fla. 1994) (denying motion to dismiss claim on the grounds that the defendant "omitted material terms from it contractual offers and misrepresented other material terms in those offers").

[7]  *See Fleming v. Ponziani*, 24 N.Y.2d 105, 112 (1969) ("Though normally the proponent of a document satisfies his burden of persuasion by offering the document, it is clear … that, if his adversary raises the specter that the contract is void because of fraud … in the execution of the agreement and offers proof with respect to that issue, then the party who seeks to sustain the validity of the document must come forward to rebut these facts by a preponderance of the evidence."); *Boxberger v. New York, New Haven & Hartford R.R. Co.*, 237 N.Y. 75, 78 (1923) (defendant had burden of proof where it raised purported release as affirmative defense and plaintiff presented evidence showing "writing … was signed by him, not as a release, but, under misrepresentations of the defendant, as a receipt for wages").

[8]  The Subscriber Agreement attached as part of Exhibit C to the Abeshyan Affidavit does not contain the language purportedly disclosing this practice.  (*See also* Reese Decl. Ex. 6 (Abeshyan Tr.) at 59:25-60:33).  Accordingly, to the extent this Court finds the Subscriber Agreement  is binding upon consumers, Plaintiff Noia cannot be found to have "expressly authorized" the

and in the Use Policy that is contained on a remote, practically inaccessible webpage.[9] Def. Mem. at 4, 6, 7-16.  However, the terms and phrases relied on by Defendant such as "network management tools and techniques," "technical means," "techniques such as limiting the number of peer-to-peer sessions a user can conduct at the same time," and "limiting the aggregate bandwidth available for certain usage protocols such as peer-to-peer" are vague and ambiguous. Even Defendants' own employees who have worked at Time Warner for decades (and who certainly should have more experience than the average consumer with respect to technical Internet jargon), do not know what these terms mean.  (Reese Decl. Ex. 7 (McKeon Tr.) at 50:10-17 ("***Q: Do you know what "peer to peer" means? A: I do not. I've heard the term, I don't really know what it means***"); Ex. 6 (Abeshyan Tr.) at 34:3-5 ("***Q: Are you familiar with the term "peer to peer" as it pertains to the Internet.  A:  Peer to peer? I'm not familiar…I have no idea***")).

     These terms do not convey a definite meaning and a reasonable consumer would not necessarily interpret this language to mean that Defendant would throttle Plaintiffs' Internet service and, as a result, provide service inferior to that promised.

     Furthermore, a reasonable interpretation of the "disclosure" language indicates that Defendant would engage in "network management practices" ***only if*** one was using the Time Warner service for illegal uses such as child pornography, pyramid investment schemes, and the

---

throttling, because the Subscriber Agreement contained in Exhibit C that was purportedly given to Mr. Noia says no such thing.

[9] If one were to type in the webpage address for the Use Policy that is provided in the Subscriber Agreement, one does not get the Use Policy, but instead gets: **THE PAGE CANNOT BE FOUND**.  (Reese Decl. Ex. 7 (McKeon Tr.) at 48:2-10).  Also, the irony should not be lost that one would have to sign up for Time Warner Internet service in the first place in order to access the User Policy that purported limited the service one had already committed to.

like.  *(*Abeshyan Aff. Ex. D at p. 35, Ex. E).  Accordingly, a consumer could not be held to "expressly authorize" (as Defendant argues) the throttling of completely legitimate uses of the Internet as occurred here.

As this Court has held, in a case involving "a contract dispute, a motion for summary judgment will only be granted if 'the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning." *Mercer*, 2009 U.S. Dist. LEXIS 62059 at *22 (denying motion for summary judgment) (quoting *Topps Co., Inc. v. Cadbury Stani S.A.I.C.,* 526 F.3d 63, 68 (2d Cir. 2008). "Ambiguity here is defined in terms of whether a reasonably intelligent person viewing the contract objectively could interpret the language in more than one way." *Topps*, 526 F.3d at 68.  As seen above, that certainly is not the case here and summary judgment must be denied.

**C. Disputed Issues of Fact Preclude Summary Judgment on Plaintiffs' Breach of Implied-in-Fact Contract and Breach of the Covenant of Good Faith and Fair Dealing Claims.**

Defendant's argument that Plaintiffs' breach of implied-in-fact contract claim and breach of the implied covenant of good faith should be dismissed is wrong. Def. Mem. at 10-11.  First, as demonstrated above, Plaintiffs are not bound by the Subscriber Agreement; *a fortiori*, they are not bound by the merger clause contained in that Agreement.  Moreover, the evidence proffered by Plaintiffs shows that an implied-in-fact contract arose between them and Defendant.  (Reese Decl., Exs. 4, ¶¶ 1-6 and 5, ¶¶ 1-6); *see also Peter L. Leepson, P.C. v. Allan Riley Co.*, No. 04-civ-3720 (LTS), 2006 U.S. Dist. LEXIS 52875, at *14 (S.D.N.Y. 2006) (Swain, J.) ("a 'contract may be implied where inferences may be drawn from the facts and circumstances of the case and the intention of the parties as indicated by their conduct'"); *Jernow v. Wendy's Int'l, Inc.*, No. 07-civ-3971 LTS, 2007 U.S. Dist. LEXIS 85104, at *10 (S.D.N.Y. 2007) (Swain, J.) ("Plaintiff claims that he and Wendy's entered into an implied-in-fact contract for the sale of fried food

products, that one of the terms of that contract was that the purchased products contain the advertised quantity of trans fat and that Defendant breached the contract by providing Plaintiff with french fries and chicken products with a higher than advertised trans fat content.  Plaintiff has sufficiently alleged a breach of contract implied-in-fact.").

Second, as stated above, by signing the work orders Plaintiffs did not agree to the throttling practice at issue. *See* Point I.B., *supra*.  But even if the work orders were everything that Defendant claims, Plaintiffs' breach of covenant claim survives because Defendant is attempting to enforce a contractual provision to "deprive the other party of the fruit of its bargain." *Gross v. Empire Healthchoice Assurance, Inc.*, 847 N.Y.S.2d 896 (Sup. Ct. N.Y. County 2007). In short, Defendant represented that it would provide uninterrupted, high-speed Internet service, yet deliberately took steps to impede that service in contravention of what Plaintiffs reasonably understood the bargain to be.

**D.  Disputed Issues of Fact Preclude Summary Judgment on Plaintiffs' CFAA Claims.**

Defendant's argument that summary judgment is warranted on Plaintiffs' claims for violation of the Computer Fraud and Abuse Act ("CFAA") because Plaintiffs expressly authorized the throttling at issue, (Def. Mem. at 8), fails for the same reasons its arguments urging dismissal of Plaintiffs' contract claims fail.  Throttling simply was not authorized.  *See* Point I.B., *supra*.  Accordingly, summary judgment must be denied on Plaintiffs' CFAA claims.

**E.  Disputed Issues of Fact Preclude Summary Judgment on Plaintiffs' Consumer Law Claims.**

Defendant contends that Plaintiff Fink's New York GBL Section 349 claim and Plaintiff Noia's California UCL, FAL and CLRA claims should be dismissed as a matter of law because Plaintiffs expressly authorized the throttling at issue.  Def. Mem. at 8-9, 13-14.  Defendant also

contends that Plaintiffs cannot prove that its "statements were misleading in a material way." Def. Mem. at 9, 15. Defendant's contentions are erroneous.

First, as shown above, the practices were not adequately disclosed and Plaintiffs did not expressly authorize them.  Second, Defendant's statements promising consumers "always on," "high speed online," "blazing fast" Internet service that is the "fastest, easiest way to get online," (FAC ¶¶ 2, 16-17 and 20), are "likely to mislead a reasonable consumer acting reasonably under the circumstances," *see Rabin v. MONY Life Ins. Co.*, No. 06-civ-775 (LTS), 2007 U.S.Dist. LEXIS 18437, at *15 (S.D.N.Y. Mar. 8, 2007) (Swain, J.), because they are completely contrary to the vastly inferior Internet service that Plaintiffs received. *(*Reese Decl., Exs. 4, ¶¶ 3 -4 and 5, ¶¶ 3-4).  This bait and switch technique is exactly the type of misconduct for which New York and California consumer protection laws are designed to protect against. *See*, *e.g.*, *Teller v. Bill Hayes, Ltd.*, 213 A.D.2d 141, 146 (2d Dep't 1995); *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008).

Defendant cannot seriously dispute that New York and California consumer protection laws forbid a party from making prominent representations regarding the quality and nature of a product or service, on the one hand, and then disclaiming such representations in fine print on the other hand.  This Court's decision in *Wendy's* and the Ninth Circuit's decision in *Gerber* inform the point.  In *Wendy's*, this Court rejected the defendant's argument that its fine-print at the bottom of nutrition posters located in Wendy's restaurants disclaimed and overrode statements made elsewhere in marketing materials that stated Wendy's had eliminated trans fat from its food products.  This Court held that the defendant's purported disclaimers were "insufficient to warn potential customers that the representations regarding trans fat content are inaccurate." *Wendy's*, 2007 U.S.Dist. LEXIS 85104, at *8.

Similarly, in *Gerber*, the defendant made representations on the front of its baby-food packaging suggesting that its baby food contained fruit and was nutritious, but disclaimed these representations in fine print on the back of the packaging. The Ninth Circuit found that the fine-print disclosures did not adequately inform consumers of the true quality of the product, opining, "[w]e disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Gerber*, 552 F.3d at 939-40.

Here, Defendant's position that it adequately disclosed the throttling practices at issue is even weaker.[10] Indeed, Defendant admits that "the disclosure language upon which Time Warner relies was not contained in the fine print of Time Warner's advertising or packaging materials." Def. Mem. at 24, fn. 11. Instead, the fine-print language Defendant relies on in support of its contractual disclosure defense is buried deep within obscure documents unrelated to its marketing materials (*i.e.*, the Subscriber Agreement on page 35 of the Welcome Kit and in a Use Policy on its website).[11] Defendant's "disclosure" language is even more confounding than that in *Wendy's* and *Gerber* because the language used by Defendant Time Warner is also vague and ambiguous. Accordingly, these alleged disclosures by Time Warner are insufficient to warn potential subscribers that Defendant would engage in the practices at issue and provide Internet

---

[10] Time Warner's reliance on *Shovak v. Long Island Commercial Bank*, 50 A.D.3d 1118, 1120 (2d Dep't 2008), is misplaced. Def. Mem. at 9. In *Shovak*, the plaintiff sued under GBL Section 349 to contest a yield premium. The court granted the defendant's motion to dismiss on the basis of the signed written agreement between the parties, which clearly disclosed that the defendant was entitled to receive a yield premium. *Id.* at 1120. In contrast, Defendant here did not clearly disclose the throttling at issue.

[11] Again, the irony should not be lost that one cannot access the Use Policy website unless one has already signed up for Time Warner's Internet service. Moreover, if one types in the Use Policy website address provided in some, but not all, of the Subscriber Agreements, one does not get the Use Policy – instead one gets: **THE PAGE CANNOT BE FOUND.**

service inferior to that promised.  Nor should reasonable consumers be expected to look beyond misleading representations in Defendant's advertising and marketing materials to discover the truth from ambiguous and vague terms in fine print in obscure documents.[12]  Accordingly, summary judgment must be denied on Plaintiff Fink's GBL Section 349 claim and Plaintiff Noia's California UCL, FAL and CLRA claims.

**F. Summary Judgment on Plaintiffs' Deceit Fraud and/or Misrepresentation Claim Is Not Appropriate.**

Defendant's argument that dismissal of Plaintiffs' fraud and misrepresentation claim is warranted because Plaintiffs expressly authorized the throttling (Def. Mem. at 12), fails for the exact same reasons stated above.  Accordingly, summary judgment on Plaintiffs' deceit fraud and/or misrepresentation claim must be denied.

**G. Summary Judgment on Plaintiffs' Unjust Enrichment Claim Is Not Appropriate.**

Defendant argues that Plaintiffs cannot prove that they were not adequately compensated for the benefit they conferred on Defendant.  Def. Mem. at 12-13.  But Plaintiffs paid a premium for uninterrupted high-speed Internet service and did not authorize Defendant to interfere with such service.  Given that Defendant's prominent advertising and marketing materials represented

---

[12] Moreover, "[m]ateriality is a question of fact for the jury" and, thus, is not properly resolved on a motion for summary judgment where reasonable minds could disagree.  *Lafarge N. Am., Inc. v. Discovery Group L.L.C.*, 574 F.3d 973, 982 (8th Cir. 2009).  Likewise, it is black letter law that "[r]easonableness determinations are … quintessential jury issues." *Wyeth v. King Pharm., Inc.*, 396 F.Supp.2d 280, 288 (E.D.N.Y. 2005) (denying summary judgment where reasonable people could have differing interpretations of words used).  Where, as here, the submitted evidence raises disputed issues of material fact concerning Plaintiffs' interpretation of Defendant's statements at issue, summary judgment is inappropriate.  *Id.* ("Summary judgment on the reasonableness of someone's interpretation is appropriate only when no reasonable person could have assigned a particular meaning to the words used."); *see also Yesner v. Spinner*, 765 F.Supp. 48, 51 (E.D.N.Y. 1991) (denying summary judgment where "classic jury question" presented by evidence showing possibility of more than one reasonable interpretation).

that it would provide uninterrupted high-speed service, it would be against good conscience to permit Defendant to unjustly keep Plaintiffs' money because of incoherent fine-print language in obscure documents that Defendant claims allow it to adversely interfere with one's service.[13]

## H.  Summary Judgment on Plaintiff Noia's Injunctive Relief Claims Is Improper.

In his Affidavit, Plaintiff Noia attests that he "would have continued [his] Time Warner service had Time Warner provided the level of service it had promised."  Reese Decl., Ex. 5, ¶ 6. Consequently, Plaintiff Noia has demonstrated that "'there exists a definitive likelihood that he will once again become a subscriber of [Defendant's]", thereby conveying standing on him. *See Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 997 (N.D. Cal. 2007).  This is enough to survive dismissal of Mr. Noia's injunctive claims.[14]

## II. JUDGMENT ON THE PLEADINGS ON COUNTS I-IV AND VIII-VI IS IMPROPER BECAUSE PLAINTIFFS PLEAD FACIALLY PLAUSIBLE CLAIMS

## A.  The Applicable Standard

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).  Thus, "[i]n reviewing a motion to dismiss …

---

[13] Defendant's reliance on *Judge Rotenberg Educ. Ctr. v. Maul*, 230 A.D.2d 278, 281 (N.Y. App. Div. 1997), is misplaced.  There, the plaintiffs had advance notice that funding for a school for the disabled would be discontinued whereas here, Defendant's alleged disclosures did not give Plaintiffs advance notice that it would engage in the throttling at issue.  *See* Point I.B., *supra*.

[14] If the Court determines that Plaintiff Noia lacks standing to bring claims for injunctive relief because he is no longer a Time Warner subscriber, Plaintiffs respectfully request leave to amend the Complaint to add a current Time Warner subscriber as a plaintiff. *See Stickrath v. Globalstar, Inc.,* 527 F. Supp. 2d 992, 997 (N.D. Cal. 2007) (granting leave to amend injunctive relief claim to allege that plaintiffs currently subscribe to satellite phone service or that they intend to subscribe to service in the future).  Specifically, Plaintiffs' counsel have been retained by two citizens of California who currently are Time Warner Internet subscribers.  (Reese Decl., ¶ 11).

the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Morris v. Lerner Assocs.*, No. 09 CV 2479, 2010 U.S.Dist. LEXIS 6115, at *6 (E.D.N.Y.  Jan. 26, 2010).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*[15]

As demonstrated below, the factual allegations of the Complaint are sufficient and, as discussed fully in Point I, *supra*, numerous disputed issues of material fact exist to preclude judgment as a matter of law in Defendant's favor on Plaintiffs' claims.

**B.  Dismissal Of Plaintiff's CFAA Claims Is Not Proper.**

**1.  The Complaint Sufficiently Alleges Damage.**

Defendant argues for dismissal of Counts I-III for violation of the CFAA claiming that "Plaintiffs do not allege that Time Warner deleted, destroyed, or impaired any data stored on their computers" and fail to "allege any facts indicating how Time Warner's alleged network management practices compromised Plaintiffs' internal software." Def. Mem. at 18-19. Defendant is wrong, and its argument is contradicted by the facts and the law.

The CFAA defines damage as "***any impairment to the*** integrity or ***availability of data, a program, a system, or information***." 18 U.S.C. §1030(e)(8) (emphasis added); *see also Patrick*

---

[15]  In the event the Court decides to grant Defendant's Rule 12(c) Motion, Plaintiffs respectfully request leave to amend the Complaint.  *See* Fed.R.Civ.P. 15(a) ("The court should freely give leave when justice so requires").

*Patterson Custom Homes Inc.*, 586 F.Supp.2d 1026, 1037 (N.D.Ill. 2008); *Register.com, Inc. v. Verio, Inc.*, 126 F.Supp.2d 238, 252 n.12 (S.D.N.Y. 2000).

The decision in *Kalow & Springnut, LLP v. Commence Corp.*, No. 07-civ-3442, 2009 U.S.Dist. LEXIS 320, at *7 (D.N.J. Jan. 5, 2009) is on point here.  In *Kalow*, the court held that the plaintiff "sufficiently pled damages recoverable under the CFAA, namely, the unavailability of certain customer data and information" resulting from the defendant's conduct.  *Id.*  Here, the Complaint alleges that the forged reset packets transmitted by Defendant "compromis[ed] the internal software of Plaintiffs' computers ***and impair[ed] their ability to receive and transmit data***." (FAC ¶¶ 52, 60 and 68).  The Complaint also alleges that "Ms. Fink and Mr. Noia were unable to receive and make Skype calls they would have been able to receive and make were it not for the Defendant's throttling practice, and the integrity of their computer systems [was] therefore compromised."  (FAC ¶ 34).  As further alleged, "the availability of data to Ms. Fink and Mr. Noia was impaired because their computers were unable to send and/or receive call requests and signal information from other Skype users." (*Id.*)  Thus, the Complaint sufficiently alleges damages and pleads a facially plausible CFAA claim.

**2.   The Complaint Sufficiently Alleges Access.**

Defendant's assertion that Plaintiffs fail to allege access within the meaning of the CFAA ignores the law.  A computer is "accessed" within the meaning of the CFAA when someone makes use of a computer.  *America Online, Inc. v. National Health Care Disc., Inc.*, 121 F.Supp.2d 1255, 1273 (N.D. Iowa 2000) ("when someone sends an e-mail message from his or her own computer, and the message then is transmitted through a number of other computers until it reaches its destination, the sender is making use of all of those computers, and is therefore

'accessing' them").[16]   Furthermore, access does not require that data stored on the targeted computer be affected.  *Southwest Airlines*, 2007 U.S.Dist. LEXIS 96230, at *36.  Nonetheless, Plaintiffs' allegations sufficiently state how Defendant's conduct impaired data on their computers.  (FAC ¶¶ 34, 52, 60 and 68).  Moreover, to the extent throttling aborted or interrupted downloads, the data on Plaintiffs' computers was both damaged and rendered incomplete.[17] Thus, the Complaint sufficiently alleges access and pleads a facially plausible CFAA claim.

## C.   **Dismissal of Plaintiffs' Consumer Law Claims Is Not Proper.**

Time Warner argues for dismissal of Plaintiff Fink's GBL Section 349 claim, claiming that Plaintiff Fink fails to allege Defendant did not comport with its representations that its Internet service is "always-on"; "blazing fast"; the "fastest, easiest way to get online"; and provides "up to 3 times the speed of most standard DSL packages and up to 100x faster than

---

[16] *See also MPC Containment Sys. Ltd. v. Moreland*, No. 05 C 6973, 2008 U.S.Dist. LEXIS 60546, at *53 (N.D. Ill. Jul. 23, 2008); *Southwest Airlines Co. v. BoardFirst, L.L.C.*, No. 3:06-civ-0891-B, 2007 U.S. Dist. LEXIS 96230, at *36 (N.D.Tex. Sept. 12, 2007) (noting that the dictionary meaning of "access" as a transitive verb means to "to get at" and the meaning of the noun is the "freedom or ability to obtain or make use of").  Manifestly, sending forged reset packets falls well within the definition set forth under these cases.  This interpretation makes sense because access should be defined as "any successful interaction with a computer," and taking an extreme or unduly narrow approach such as that advocated by Time Warner here would exempt entire categories of activities from "laws … designed broadly to prohibit exceeding privileges on a computer." *See* Orin S. Kerr, *Cybercrime's Scope: Interpreting "Access" and "Authorization" in Computer Misuse Statutes*, 78 N.Y.U.L.Rev. 1596, 1648 (Nov. 2003).

[17] Defendant's reliance on *E360Insight, LLC v. Comcast Corp.*, 546 F.Supp.2d 605 (N.D.Ill. 2008) is unavailing.  In *E360Insight* the plaintiff was a spammer whose e-mails were blocked by the defendant and sent back to the plaintiff's computer, causing its system to become overwhelmed with data.  *E360Insight, LLC*, 546 F.Supp.2d at 608 n.2.  The issue there was whether access was authorized, not whether there was any "access" at all, as Defendant argues here.  Indeed, the *E360Insight* court noted, "the initiation of access is laid at e360's door, not at Comcast's." *Id.*  Furthermore, in contrast to the situation in *E360Insight,* Plaintiffs here do not initiate access. Defendant initiates access when it sends forged reset packets.  Thus, Plaintiffs' allegations are sufficient to allege access for purposes of their CFAA claims.

dial-up." Def. Mem. at 21-23.  This is completely without merit and a gross mischaracterization of the Complaint.  Rather, the Complaint *does* allege that:  1) Plaintiffs' service did not comport with Time Warner's statements that its Internet service was "always-on," "blazing fast" or the "fastest easiest way to get online" (FAC ¶¶ 2-3, 16-17, 31 and 34-35); 2) the statement "up to 3 times the speed of most standard DSL packages and up to 100 times faster than dial-up" was inconsistent with Time Warner's throttling practice at issue (FAC ¶¶ 20, 22, 31 and 34-35); and 3) as a general matter, Time Warner's Internet service was not "blazing fast" or "high speed" (FAC ¶¶ 2-3,16-17, 20 and 22).

Nor does Defendant's argument that its statements "blazing fast" and the "fastest, easiest way to get online" constitute non-actionable puffery (Def. Mem. at 23-24) have any merit. These terms have real meaning to consumers for whom slow, and intermittently disconnected service is frustrating and inconvenient.  *See, e.g., State of N.Y. v. Stevens*, 130 Misc.2d 790, 792 (Sup. Ct. 1985).  Indeed, as the Complaint alleges, Plaintiffs paid a premium price for Defendant's high-speed Internet service in reliance on these and Defendant's other misrepresentations of high-speed and reliability.  (FAC ¶¶ 16-17).[18]

Moreover, Defendant's statements at issue are all factual assertions regarding the availability and speed of its Internet service, (FAC ¶¶ 16-17), and, therefore, "are distinguish[able] from puffery." *See Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F.Supp.2d 401, 405 (E.D.N.Y. 2004); *Mintz v. American Tax Relief, LLC*, 16 Misc.3d 517, 523 (Sup. Ct. N.Y. County 2007) ("These two mailings … make explicit promises which for

---

[18] Defendant does not contest that its statements of "high speed online" service and an "always-on connection" are puffery.  Def. Mem. at 23-24.  Nor could it, as New York's Court of Appeals has made clear that such statements regarding Internet service are actionable under GBL § 349. *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 323 (2002).

purposes of this motion cannot be described as 'puffery' and could by a trier of fact be found to be purposely misleading and deceptive"); *see also Gerber*, 552 F.3d at 939 n.3 (declining to dismiss as puffery statement, which "contribute[d] … to the deceptive context of the packaging as a whole," and observing, "[i]t is not difficult to choose statements, designs and devices which will not deceive") (quoting *United States v. Ninety-Five Barrels More or Less of Alleged Apple Cider Vinegar*, 265 U.S. 438, 44 S.Ct. 529 (1924)). Accordingly, Defendants' motion to dismiss Plaintiffs' New York and California consumer protection claims must be denied.

**D.   Dismissal of Plaintiffs' Breach of Contract Claim Is Not Proper.**

Defendant's argument that Plaintiffs' breach of contract claim must be dismissed because "they did not attach what they consider to be the contract to the Complaint" and do not "refer or cite to the contract provisions at issue" has no merit.  Def. Mem. at 24.  Indeed, the Complaint alleges that Plaintiffs "entered into a contract with Defendant to pay monthly fees in exchange for its high-speed Internet service." (FAC ¶ 78).  Plaintiffs' allegations therefore sufficiently state a plausible breach of contract claim.  *See Griffin Bros., Inc. v. Yatto*, 68 A.D.2d 1009 (3d Dep't 1979) ("plaintiff was not required to attach a copy of the contract or plead its terms verbatim").

**E.   Dismissal of Plaintiffs' Unjust Enrichment Claim Is Not Proper.**

"Although proof of an enforceable contract, either oral or written, precludes recovery under the theory of unjust enrichment, Fed. R. Civ. P. 8(d) permits parties to plead alternative**,** even inconsistent, claims." *Rodriguez v. It's Just Lunch Int'l*, No. 07-civ-9227 (KNF), 2010 U.S. Dist. LEXIS 16622, at *35 (S.D.N.Y. Feb. 23, 2010).  Under New York law, "a party is not precluded from proceeding on both breach of contract and unjust enrichment (quasi-contract) theories where there is a bona fide dispute as to the existence of the contract, or where the contract does not cover the dispute in issue." *VCG Special Opportunities Master Fund Ltd. v.*

24

*Citibank, N.A.*, 594 F. Supp. 2d 334, 344 (S.D.N.Y. 2008); *see also Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*, No. 03-civ-15 (RWS), 2007 U.S. Dist. LEXIS 42639 (S.D.N.Y. June 11, 2007), at *24-5 ("unjust enrichment …may be proper if the contract is found to be void.").    As discussed above, there is a clear dispute as to whether the party's contract authorizes throttling.  Thus, Defendant's motion to dismiss the unjust enrichment claim must be denied.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request the Court to deny Defendant's Motion.

Respectfully submitted,

Dated: March 12, 2010

**REESE RICHMAN LLP**

By: */s/ Michael R. Reese*
Michael R. Reese
Kim E. Richman
Belinda L. Williams
875 Avenue of the Americas, 18th Floor
New York, New York 10001

- and -

**MILBERG LLP**
Sanford P. Dumain
Peter E. Seidman
Joshua E. Keller
One Pennsylvania Plaza
New York, New York 10119

*Attorneys for Plaintiffs*

25