UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

JESSICA FINK et al.

        Plaintiffs,

   -v-

TIME WARNER CABLE,

        Defendant.

----------------------------------------------------------x

```
┌──────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____              │
│ DATE FILED: 0 6 SEP 2011             │
└──────────────────────────────────────┘
```

No. 08 Civ. 9628 (LTS)(KNF)

### MEMORANDUM OPINION AND ORDER

      Plaintiffs Jessica Fink ("Fink") and Brett Noia ("Noia") (collectively, "Plaintiffs")

bring this putative nationwide class action pursuant to 18 U.S.C. § 1030, asserting claims for

violations of the Computer Fraud and Abuse Act (the "CFAA") against Defendant Time Warner

Cable ("Defendant").  Plaintiffs allege principally that Defendant wrongfully limits Plaintiffs'

use of certain peer-to-peer applications without authorization and thereby causes damage to

Plaintiffs' computers.  Plaintiffs also assert various state law claims stemming from alleged

misrepresentations by Defendant concerning the nature and quality of its internet service.  This

Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1367.[1]

---

[1]    Plaintiffs' First Amended Complaint (the "Complaint") includes allegations
sufficient to address the requirements for jurisdiction under the Class Action
Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).  There is at least one diverse class
member because Defendant is a citizen of New York and Plaintiff Noia is a citizen
of California. (Compl. ¶¶ 12, 17, 18.)  In addition, the Complaint alleges to a
reasonable probability that the aggregated amount in controversy exceeds
$5,000,000 because Plaintiffs have alleged that each class member was overcharged
at least $20 per month in the class period and that there are an estimated 8.8 million
class members.  (Id. ¶¶ 23, 39.)

Defendant moves to dismiss certain of Plaintiffs' claims pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and for summary judgment as to certain of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 56(a).[2] Plaintiffs move, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, to strike portions of certain documents submitted by Defendant in support of its motion for summary judgment. The Court has considered carefully all of the parties' submissions. For the following reasons, Plaintiffs' motion is granted in its entirety, and Defendant's motion is granted in part and denied in part.

BACKGROUND

In their Complaint, Plaintiffs assert claims for violations of the CFAA, 18 U.S.C. § 1030(a)(5)(A)-(C) (Counts I – III); New York and California consumer protection statutes (New York General Business Law § 349 (Count IV), California Business and Professions Code §§ 17200 and 17500, and California Civil Code § 1750 (Counts IX – XI)); breach of contract (Count V); breach of implied-in-fact contract (Count VI); common law fraud (Count VII); and unjust enrichment (Count VIII). Plaintiffs sue on their own behalf and on behalf of a nationwide class of persons, which includes all people who subscribed to Defendant's Road Runner internet service from November 7, 2003 to the date of class certification, pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure. (Compl. ¶ 38.) Fink also sues on behalf of a

---

[2]     As described below, Defendant moved initially for summary judgment as to all of Plaintiffs' claims. However, Defendant subsequently withdrew entirely its motion for summary judgment as to Counts I – III, and revised the basis on which it seeks summary judgment as to Counts IV – XI. Defendant moves for judgment on the pleadings as to Counts I – V and VIII – XI. Having not done so in its initial moving papers, Defendant purports to move for judgment on the pleadings as to Count VI for the first time in its reply papers, to which Plaintiffs were permitted to sur-reply (see note 9 infra). Defendant moves for summary judgment only as to Count VII.

subclass of New York residents; Noia sues on behalf of a subclass of California residents.  (<u>Id.</u>)

<u>The Complaint</u>

  The following allegations are drawn from the Complaint and are assumed to be true for the purposes of adjudicating Defendant's Rule 12(c) motion.

  Defendant, headquartered in New York, is one of the world's largest media and entertainment conglomerates and serves as an internet service provider ("ISP") to subscribers of its Road Runner High Speed Online internet service ("Road Runner").  (Compl. ¶ 18). Defendant provides Road Runner service to millions of subscribers in most states across the United States, including New York, Texas, Maine, Ohio, and California.  (<u>Id.</u> ¶¶ 18,19.)

  Plaintiff Jessica Fink is a citizen of New York and resides in New York County, New York.  (<u>Id.</u> ¶ 16.)  Plaintiff Brett Noia is a citizen of California and resides in Los Angeles County, California.  (<u>Id.</u> ¶ 17.)  During the Class Period, both Plaintiffs Fink and Noia subscribed to Defendant's Road Runner service.  (<u>Id.</u> ¶¶ 16, 17.)

  Defendant used advertisements in order to sell its Road Runner service. Defendant's Road Runner service is named after a cartoon character best known for its lightening speed.  (<u>Id.</u> ¶ 1.)  Defendant purported to provide internet service with "blazing speed" and an "always on connection" that was the "fastest, easiest way to get online."  (<u>Id.</u> ¶¶ 2, 16, 20.) Defendant advertised that "Road Runner Honors Your Need for Speed; You'll Never Get Road Rage with Road Runner."  (<u>Id.</u> ¶ 20.)  Further, Defendant advertised in its online promotional materials that it would provide premium service as compared to its competitors, stating that its service is "up to 3 times the speed of most standard DSL packages and up to 100x faster than dial-up so your family can spend their time on the computer learning, experiencing, and playing -

instead of waiting." (<u>Id.</u>)

These representations allowed Defendant to charge consumers a premium of up to more than 100% of the fees charged by its competitors. (<u>Id.</u> ¶ 21.) Both Plaintiffs Fink and Noia relied on Defendant's advertisements in deciding to purchase Defendant's service and pay a premium for it. (<u>Id.</u> ¶¶ 16, 17.) Defendant did not disclose that it would interfere with or limit their internet connections or their attempts to engage in peer-to-peer communication. (<u>Id.</u>) Had Defendant disclosed that its Road Runner service did not live up to the advertised descriptions, or that it would intentionally interfere with their internet access, Plaintiffs would not have paid a premium for the service. (<u>Id.</u>)

Defendant engaged in a network management practice that Plaintiffs refer to as "throttling" to interfere with and limit subscribers' internet communications. (<u>Id.</u> ¶ 3.) This practice of throttling was not authorized by Plaintiffs. (<u>Id.</u>) Throttling interferes with subscribers' ability to share content through peer-to-peer (P2P) transmissions. (<u>Id.</u> ¶ 25.) Computers exchange information on the internet by using Transmission Control Protocol ("TCP"), which delivers a stream of bytes from one program on one computer to another. (<u>Id.</u> ¶ 23.) TCP is often used in P2P transmissions, which tap into multiple other participating computers and exchange the data, allowing its users to share content files and real-time data with each other over the internet. (<u>Id.</u> ¶ 24.) When a computer finds that a P2P transmission is being blocked, it communicates TCP messages called reset packets that cause inbound internet connections to close down and abort the transmission of P2P content. One method of throttling is accomplished by sending forged reset packets to computers, which cause the computers engaged in P2P file sharing to abort file transfers and stop the relevant communication. (<u>Id.</u> ¶

25.)  The forged reset packets are disguised as communications from the computers themselves. (Id.)

Defendant uses the practice of throttling to frustrate its subscribers' efforts to share online content via P2P networks.  (Id. ¶ 27.)  In particular, Defendant's practices affect BitTorrent peer-to-peer file sharing communications, Gnutella, Skype, and other protocols or applications that communicate audio, video, voice, and other data content online.  (Id. ¶ 22.)  The types of information whose availability is affected include information about other computers around the world participating in a P2P network; information about query terms and results of searches across P2P networks; data contents of files; and data encapsulating the content of text and voice communications.  (Id. ¶ 28.)

Defendant's conduct was motivated by a desire to maximize its profit.  (Id. ¶¶ 7, 29.)  Defendant misrepresented the qualities of its service in order to lure subscribers into paying a premium price, steer consumers to its added-price content by throttling access to similar content available for free elsewhere on the Internet, and avoid the costs of infrastructure upgrades by throttling transmissions while recruiting additional customers.  (Id.)

Plaintiffs have sustained the following damages and losses as a result of Defendant's conduct.  (Id. ¶ 30.)  First, Plaintiff Noia relied on the Road Runner service to upload large image and vector files for his work as a freelance designer; to download files; and to watch licensed media.  (Id. ¶ 31.)  However, he consistently found that uploads from his internet connection would drop to extremely low speeds: he should have been able to upload at up to 300 kB/s, but instead he could not usually upload faster than 10kB/s and never faster than 30 kB/s. (Id.)  For this reason, he regularly rented a computer at Kinkos using his own money.  (Id. ¶ 32.)

Noia lost work opportunities because he was unable to respond to client requests and meet

professional deadlines, due to having to drive to Kinkos. (Id.) He also lost the value of this time.

(Id.) Plaintiff Noia estimates these losses for one year to be between $5,500 and $7,000. (Id.)

Second, Noia tried subscribing to Verizon's cellular data service as an alternative means of

transmitting his large files, at $59.99 per month. (Id. ¶ 33.) Verizon's service was, however, by

its nature slower than Defendant's. (Id.) Third, both named Plaintiffs used Skype, which allows

users to make free voice calls over the internet through a P2P protocol. (Id. ¶ 34.) Fink and Noia

were unable to make and receive Skype calls allegedly due to Defendant's throttling, which

allegedly compromised the integrity of their computer systems. (Id.) It also impaired the

availability of data because their computers were unable to send or receive information from

other Skype users. (Id.) Fourth, both named Plaintiffs wasted time and effort in determining

what was causing the slow connection. (Id. ¶ 35.) They rebooted their computers or made

repeated attempts to reconnect to various people on Skype. (Id.) They also incurred costs for

using land lines and cell phones to call these people. (Id.)

Evidentiary Proffers

> The following facts are undisputed[3] except as otherwise indicated. Plaintiff Fink

has been a subscriber to Time Warner Cable's internet service since on or around December 4,

2007. (Defs.' Rule 56.1 Statement ("Defs.' 56.1 Stmt") ¶ 6.)[4] Plaintiff Noia was a subscriber to

---

[3]     Facts characterized as undisputed are identified as such in the parties' statements
pursuant to Local Civil Rule 56.1 or drawn from evidence as to which there is no
non-conclusory contrary factual proffer.

[4]     The Court will consider the underlying evidence incorporated by reference. See
Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) ("for the purposes of
deciding a motion to dismiss pursuant to Rule 12(b)(6): '[T]he complaint is deemed to

Time Warner Cable's internet service from on or around March 31, 2008, through on or around January 5, 2009. (Defs.' 56.1 Stmt ¶ 13.) He is not currently a subscriber to Time Warner Cable's internet service. (Id.).

Defendant contends that detailed service terms and agreements that included express provisions permitting the network management practices at issue here were delivered to Plaintiffs in connection with installations and at other times, and Plaintiffs dispute certain allegations concerning the content and delivery of these documents. In light of Defendant's withdrawal of the aspects of its motions that were premised on the content of these documents, the disputes are not material.

DISCUSSION

Motion for Judgment on the Pleadings

Defendant moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on Counts I-VI (Plaintiffs' claims under the CFAA and New York General Business Law§ 349, as well as Plaintiff's claims for breach of contract and breach of implied-in-fact contract) and Counts VIII-XI (unjust enrichment, claims under California Business and Professions Code §§ 17200 and 17500, and California Civil Code § 1750).

The standard governing a Rule 12(c) motion is equivalent to that governing motions under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001). In deciding a motion to dismiss a

---

to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.'") (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002)).

complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, the Court must "accept as true all factual statements alleged in the complaint and

draw reasonable inferences in favor of the non-moving party." McCarthy v. Dunn & Bradstreet

Corp., 483 F.3d 184, 191 (2d Cir. 2007) (internal citations omitted).  "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Where a complaint pleads facts

that are merely consistent with a defendant's liability, it stops short of the line between

possibility and plausibility of entitlement to relief." Iqbal, 129 S. Ct. at 1937 (internal quotations

and citations omitted).  This standard applies to all civil actions. Id. at 1953.

CFAA Claims (Counts I – III)

Defendant seeks the dismissal of Counts I – III of pursuant to Federal Rule of

Civil Procedure 12(c), for failure to allege facts sufficient plausibly to frame violations of 18

U.S.C. § 1030(a)(5)(A)-(C).

Under the CFAA, an individual commits computer fraud when she:

> (A) knowingly causes the transmission of a program, information, code, or
> command, and as a result of such conduct, intentionally causes damage
> without authorization, to a protected computer;
> (B) intentionally accesses a protected computer without authorization, and as
> a result of such conduct, recklessly causes damage; or
> (C) intentionally accesses a protected computer without authorization, and as
> a result of such conduct, causes damage and loss.

18 U.S.C.A. § 1030(a)(5) (West 2008).

In order to bring a civil action under the CFAA, a person must have "suffer[ed]

damage or loss by reason of a violation of this section. . ." 18 U.S.C.A. § 1030(g) (West 2008).

For subsection (C), both "loss" and "damage" are required.  For subsections (B) and (C),

"access" is also required.  Plaintiffs allege that Defendant knowingly caused the transmission of a program, information, code, or command and, as a result of such conduct, intentionally caused damage to their computers and loss by knowingly transmitting reset packets to their computers with the intention of impeding or preventing Plaintiffs' P2P transmissions.  (Compl. ¶ 51.) Plaintiffs also allege that Defendant intentionally accessed their computers and as a result recklessly caused damage and loss, by knowingly transmitting the reset packets to their computers to impede data receipt and transmission.  (Id. ¶¶ 60, 68.)  Defendant contends that Plaintiffs have failed sufficiently to allege the requisite loss, damage and access.

*Loss*

The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C.A. § 1030(e)(11) (West 2008).  Consistent with this statutory definition, courts have interpreted such "loss" to include "any remedial costs of investigating the computer for damage, remedying the damage and any costs incurred because the computer cannot function while or until repairs are made."  See, e.g., Nexans Wires S.A. v. Sark-USA, Inc., 319 F. Supp. 2d 468, 474 (S.D.N.Y. 2004); Tyco Int'l Inc. v. John Does 1-3, No. 01 Civ. 3856 (RCC)(DF), 2003 WL 21638205, *1 (S.D.N.Y. July 11, 2003) (while the CFAA "allows recovery for losses beyond mere physical damage to property, the additional types of damages awarded by courts under the Act have generally been limited to those costs necessary to assess the damage caused to the plaintiff's computer system or to resecure the system in the wake of a hacking attack.")

Plaintiffs plead monetary losses consisting of their payments for high-speed

internet services allegedly not received, costs to prevent the Defendant's throttling practice and the costs of obtaining information elsewhere when they were unable to use their computers for this purpose. Plaintiffs also plead losses relating to time and effort in assessing "damage" to each computer whose transmissions were interrupted. These alleged losses are outside of the scope of those contemplated by the CFAA. Plaintiffs do not allege that they needed to "restore[] . . . data, [a] program, [a] system, or information to its condition prior to" Defendant's conduct. See 18 U.S.C.A. § 1030(e)(11) (West 2008). Plaintiff's alleged losses are simply not of the type contemplated by the statute and recognized in case law. See, e.g., Nexans Wires., 319 F. Supp. 2d at 475-76 (emphasizing that costs have to relate to "remedying damage to the computer"). Plaintiffs' pleadings as to loss, while sufficiently specific, nevertheless fall outside the kind of loss that the statutory definition requires – loss relating to damaged "data" or "information," or a damaged "program" or "system." Plaintiffs' allegations of loss, therefore, fail to satisfy the applicable plausibility requirement in light of the statutory definition.

*Damage*

The CFAA defines damage as "any impairment to the integrity or availability of data, a system, or information." 18 U.S.C.A. § 1030(e)(8) (West 2008). Plaintiffs allege that Defendant impaired their ability to obtain data and utilize their computer systems by knowingly transmitting "reset packets to Plaintiffs' and Class members' computers with the intention of impeding or preventing Plaintiffs' and Class members' peer-to-peer transmissions" and that damage was caused because the reset packets "compromis[ed] the internal software of Plaintiffs' computers and impair[ed] their ability to receive and transmit data." (Compl. ¶¶ 51-52). The Complaint also explains how the throttling process prevents data exchange and inhibits certain use of computers. (Id. ¶¶ 23-26.) In addition, the Complaint identifies the specific types of

information whose availability is "impeded" and identifies a particular program, Skype, that is rendered unusable by Defendant's alleged throttling. (Id. ¶¶ 28, 34).

Defendant argues, however, that the statutory meaning of "damage" is limited to damage actually done "on the plaintiff's computer." See, e.g., Motorola, Inc. v. Lemko Corp, 609 F. Supp. 2d 760 (N.D. Ill. 2009) (holding that disclosing trade secrets did not qualify as "damage" under the CFAA and stating that "[t]he plain language of the statutory definition refers to situations in which data is lost or impaired because it was erased or because (for example) a defendant smashed a hard drive with a hammer."); Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l., Inc., 616 F. Supp. 2d 805 (N.D. Ill. 2009) (stating that "an employee causes 'damage' when she destroys company data" and holding that utilizing confidential information in violation of a non-competition agreement was not covered by the statute).

There is no case law to indicate that the Second Circuit itself or any courts in this Circuit have adopted Defendant's restrictive reading of the concept of "damage." The literal language of the CFAA indicates that any impairment of an individual's access to data, systems or information via their computer because of another's party's interference qualifies as damage. See 18 U.S.C. § 1030(e)(8) ("the term 'damage' means any impairment to the integrity or availability of data, a program, a system, or information" (emphasis supplied)). Plaintiffs' pleaded facts are consistent with the literally terms of the statutory definition. Their specific allegations include "enough facts to state a claim to relief that is plausible on its face" insofar as "damage" is required. Twombly, 550 U.S. at 570.

*Access*

18 U.S.C. § 1030(a)(5)(B) and (a)(5)(C) require a defendant to have "accessed" a

plaintiff's computer(s).  Plaintiffs' allege that Defendant accessed their computers in violation of the statute by "knowingly transmitting 'reset' packets to Plaintiffs' and the Class members' computers and otherwise accessed their computers to impede data receipt and transmission." (Compl. ¶ 60.)  Plaintiffs' explain the workings of the 'reset' packets in various parts of their Complaint.

Unlike "loss" and "damage," the term "access" is not explicitly defined in the statute.[5]  While the Second Circuit has yet to decide what constitutes "access" for purposes of the CFAA, courts in other circuits have interpreted "access" consistently with the word's common definition.  See Southwest Airlines Co. v. BoardFirst, L.L.C., 06 Civ. 0891-B (JJB), 2007 WL 4823761, *8 (N.D. Tex. Sept. 12, 2007) (utilizing the "dictionary definition . . . mean[ing] 'to get at' or 'gain access to'" in determining "access" pursuant to the CFAA); Am. Online, Inc. v. Nat'l Health Care Disc., Inc., 121 F. Supp. 2d 1255, 1272-73 (N.D. Iowa 2000) ("As a noun, 'access,' in this context, means to exercise the freedom or ability to make use of something.  For purposes of the CFAA, when someone sends an e-mail message from his or her

---

[5]     The statute does, however, define the phrase "exceeds authorized access" to mean "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C.A. § 1030(e)(6) (West 2008).  A number of cases support a narrow reading of "exceeding authorized access."  These cases generally involve an individual who was granted access to a computer system and exceeded that authorization by using the computer system for inappropriate purposes.  See, e.g., Orbit One Commc'ns, Inc. v. Numerex Corp., 692 F. Supp. 2d 373, 385 (S.D.N.Y.2010) ("[R]eading the phrases 'access without authorization' and 'exceeds authorized access' to encompass an employee's misuse or misappropriation of information to which the employee freely was given access and which the employee lawfully obtained would depart from the plain meaning of the statute."); University Sports Pub. Co. v. Playmakers Media Co., 725 F. Supp. 2d 378, 383-84 (S.D.N.Y. 2010) (same). These courts have held that such misappropriation of information, while actionable, is outside the scope of the CFAA.  These decisions do not, however, speak directly to what constitutes "access" under the CFAA more generally.

own computer, and the message then is transmitted through a number of other computers until it reaches its destination, the sender is making use of all of those computers, and is therefore 'accessing' them."); but see Role Models Am., Inc. v. Jones, 305 F. Supp. 2d 564, 567-68 (D. Md. 2004) (holding that passive receipt of email communications does not qualify as "access" under CFAA). Here, far from being a passive sender of emails, Defendant has constructed a program to actively interrupt communications on Plaintiffs' computers.

An interpretation of the term "access" that is consistent with the term's standard dictionary definition and common usage is also appropriate in light of the continually changing nature of computer technology and fraud.[6] Seeing no valid reason to impose a more restrictive or narrow definition of the term, and without needing to define the outer limits of the concept, the Court finds that the term "access" should be interpreted broadly enough to include Defendant's alleged conduct.

For the foregoing reasons, Plaintiffs have satisfied the damage and access elements of their claims under the CFAA and have plead sufficiently these claims. Plaintiffs, however, have failed to plead loss adequately. Accordingly, Defendant's motion for judgment on the pleadings is denied as to Counts I and II and granted as to Count III.

New York General Business Law § 349 Claim (Count IV)

Plaintiffs assert that Defendant violated New York General Business Law Section 349 by misrepresenting the nature and quality of the high-speed internet service it sells to consumers, causing Plaintiffs and other consumers to suffer injuries by paying for products

---

[6]   For an illuminating discussion of the problems and pitfalls of a narrow construction of "access," see Orin S. Kerr, Cybercrime's Scope: Interpreting "Access" and "Authorization" in Computer Misuse Statutes, 78 N.Y.U. L. Rev. 1596, 1646-47 (Nov. 2003).

different from and of a lesser quality than those advertised. Specifically, Plaintiffs argue that Defendant falsely represented that its high-speed internet service provides, inter alia, an "always-on connection" that is "blazing fast" and is the "fastest, easiest way to get online," when in fact the Defendant intentionally interferes with its subscribers' connections to the internet by delaying and/or blocking certain communications, thereby injuring Plaintiffs and all others similarly situated. (Compl. ¶ 74.) As a result, Plaintiffs allege, they had to take measures and incur expenses that would have been unnecessary had Defendant's internet service performed as advertised. Defendant seeks the dismissal of this claim, arguing that these allegedly false representations are not actionable because they are mere puffery and thus unlikely to mislead a reasonable consumer acting reasonably under the circumstances.

In order to establish a violation of Section 349 of New York's General Business Law, "(1) the defendant's challenged acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) the plaintiff must have sustained injury as a result." Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 126 (2d Cir. 2007). For the purpose of Section 349, "deceptive acts and practices" are "those likely to mislead a reasonable consumer acting reasonably under the circumstances." See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 647 N.E.2d 741, 745 (N.Y. 1995).

Defendant does not challenge the sufficiency of Plaintiffs' allegations with respect to the first and third elements of a claim under Section 349. Disputed is whether Plaintiffs have adequately alleged the second element: deceptive acts or practices likely to mislead a reasonable consumer acting reasonably under the circumstances. Plaintiffs point to four allegedly deceptive advertising representations made by Defendant about its Road Runner

service: (1) its "always-on connection," (2) its "blazing fast speed," (3) it is the "fastest, easiest way to get online," and (4) its service being "up to 3 times the speed of most standard DSL packages and up to 100x faster than dial-up so your family can spend their time on the computer learning, experiencing, and playing - instead of waiting." (Compl. ¶¶ 2, 3, 16, 20, 74.)

Statements and practices that are mere puffery are not actionable. Puffery includes generalized or exaggerated statements which a reasonable consumer would not interpret as a factual claim upon which he could rely. See Pelman v. McDonald's Corp., 237 F. Supp. 2d 512, 528 n.14 (S.D.N.Y. 2003); Hubbard v. General Motors Corp., No. 95 Civ. 4362 (AGS), 1996 WL 274018, at *6 (S.D.N.Y. May 22, 1996). Regarding puffery, the Second Circuit has stated that "[s]ubjective claims about products, which cannot be proven either true or false, are not actionable." Lipton v. Nature Co., 71 F.3d 464, 474 (2d Cir. 1995). Puffery can also take the form of "an exaggeration or overstatement expressed in broad, vague, and commendatory language[, as distinguished] from misdescriptions or false representations of specific characteristics of a product." Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 945 (3d Cir. 1993). "Courts have found statements to be puffery as a matter of law when the statements do not provide any concrete representations." Basquiat ex rel. Estate of Basquiat v. Sakura International, No. 04 Civ. 1369 (GEL), 2005 WL 1639413, at *5 (S.D.N.Y. July 5, 2005). Some of Defendant's advertising terms fall squarely within the category of non-actionable puffery. Indeed, terms like "blazing fast" and "fastest, easiest" are classic examples of generalized puffery. See Educational Sales Programs, Inc. v. Dreyfus Corp., 65 Misc. 2d 412, 417 (Sup. Ct. N.Y. Co. 1970). The first and fourth statements relied upon by Plaintiffs -- "always-on connection" and speeds "up to" specified multiples of DSL and dial up connections – are

somewhat more specific.  Plaintiffs nonetheless fail to state Section 349 causes of action with

respect to these claims, because they have not alleged a failure to provide a connection that is

always available, and because they proffer no facts that would show that the speed of

Defendant's service is not "up to" the cited multiples of the speed of competing services.  Cf.

Jernow v. Wendy's Int'l, Inc., No. 07 Civ. 3971(LTS)(THK), 2007 WL 4116241, at* 3

(S.D.N.Y. 2007) (misrepresentations of transfat content of food alleged sufficiently).

   Accordingly, Defendant's motion for judgment on the pleadings as to Count IV is

granted.

Breach of Contract Claim (Count V)

   Plaintiffs claim that they entered into a contract with Defendant to pay monthly

fees in exchange for its high-speed internet service, that they performed their obligations under

the contract by paying their monthly fees, and that Defendant breached the contract by

intentionally interfering with their access to and use of the high-speed internet service.  (Compl.

¶¶ 78-80)  Defendants argue that the breach of contract claim must be dismissed because

Plaintiffs have neither attached what they consider to be the contract to the Complaint nor

referred to or cited the specific contract terms at issue.

   To properly plead a breach of contract claim under New York law, a party must

identify (1) the existence of a contract; (2) performance by one party; (3) breach of the contract

by the other party; and (4) resulting damages.  Rexnord Holdings, Inc. v. Bidermann, 21 F.3d

522, 525 (2d Cir. 1994).  The plaintiff does not need to attach a copy of the alleged contract to

his complaint or quote directly from the contract alleged to have been breached.  See Griffin

Bros., Inc. v. Yatto, 68 A.D.2d 1009 (3rd Dept. 1979).  However, a breach of contract claim will

be dismissed where a plaintiff fails to allege "the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated." Martinez v. Vakko Holding A.S., No. 07 Civ. 3413 (LAP), 2008 WL 2876529, at *2 (S.D.N.Y. July 23, 2008). The plaintiff must allege the essential terms in nonconclusory language. Sirohi v. Trustees of Columbia University, 162 F.3d 1148 (2d Cir. 1998).

  Here, Plaintiffs have not set forth with specificity the essential terms of the contract that they allege Defendant has breached with requisite specificity. Plaintiffs claim that they entered into a contract with Defendant to pay monthly fees in exchange for "high-speed" internet service. (Compl. ¶ 78.) This simple characterization of the nature of the promise, and the equally simplistic allegations that Defendant failed to perform, are insufficient to make the requisite plausible factual demonstration of the basis of Plaintiffs' claim. See Twombly, 550 U.S. at 570.

  Defendant's motion for judgment on the pleadings as to Count V is therefore granted.

Breach of Implied-in-Fact Contract Claim (Count VI)

  In its reply papers, Defendant seeks judgment on the pleadings as to Plaintiffs' breach of an implied-in-fact contract and breach of the implied covenant of good faith and fair dealing causes of action, Count VI.[7] Under New York law, an implied-in-fact contract requires "consideration, mutual assent, legal capacity and legal subject matter" to be established. Maas v. Cornell University, 94 N.Y.2d 87, 94 (1999). There is no dispute as to the parties' legal capacity

---

[7]   Although this argument was raised for the first time in Defendant's reply, the Court will consider the merits of Defendant's argument because Plaintiffs were given an opportunity to submit a sur-reply. See also note 9 infra.

to enter into such a contract or that the alleged contract was regarding a legal subject matter. The Plaintiffs allege that they paid for and received cable services on a monthly basis from Defendant. (Compl. ¶ 83.) This is sufficient to meet both the "mutual assent" and "consideration" aspects of the alleged contract. See Berlinger v. Lisi, 288 A.D.2d 523 (N.Y. 3rd Dep't 2001) ("As a general rule, the performance and acceptance of services can give rise to the inference of an implied contract to pay for the reasonable value of such services.").

However, Plaintiffs' claim relies on advertisements to supply the terms of the alleged implied-in-fact contract. Plaintiffs assert that the implied-in-fact contract was breached because the "Defendant's practice of offering 'low-speed' internet service" was in conflict with "Defendant's promises regarding the quality of its high-speed internet service," which they allege were the basis of the implied in fact contract. (Compl. ¶¶ 82-83.) Because the advertisements referred to by Plaintiffs do not contain sufficient specific, concrete, factual representations such that they could be interpreted to supply the terms of an implied contract, Plaintiffs have failed to state a cause of action in this regard. Cf. Jernow, 2007 WL 4116241, *4 (finding that fast food advertisements, by including specific, measurable, concrete claims about transfat contents that plaintiff alleged were inaccurate, were of a kind sufficient to form the basis for an implied-in-fact contract.)

Defendant's motion for judgment on the pleadings as to Count VI is therefore granted.

Unjust Enrichment Claim (Count VIII)

"Under New York law, for a plaintiff to prevail on a claim of unjust enrichment, he must establish (1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience

the defendant should return the money or property to the plaintiff." <u>Golden Pac. Bancorp v.</u>

<u>FDIC</u>, 273 F.3d 509, 519 (2d Cir. 2001).  Plaintiffs Fink and Noia allege that they paid a

premium for high speed internet service that was not received.  They allege that Defendant's

deceptive practices violate the equitable principles of justice and that the inflated prices are a

benefit conveyed to Defendant at their expense.  For the reasons stated above, these allegations,

in light of the general advertising claims and amorphous, unmeasurable promises on which they

are based, are not sufficient to state a claim for unjust enrichment.  <u>Compare</u> <u>Jernow</u>, 2007 WL

4116241, at *5.

      Accordingly, Defendant's motion for judgment on the pleadings as to Plaintiffs'

unjust enrichment claim, Count VIII, is granted.

<u>CA Business and Professions Code §§ 17200, 17500, and 1750 Claims (Counts IX – XI)</u>

      California's unfair competition law (CUCL) prohibits any "unlawful, unfair or

fraudulent business act or practice."  <u>Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.</u>,

973 P.2d 527, 539 (Cal. 1999); Cal. Bus. & Prof. Code § 17200 <u>et seq.</u>  "By proscribing 'any

unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as

unlawful practices that the unfair competition law makes independently actionable."  <u>Cel–Tech</u>

<u>Commc'ns</u>, 973 P.2d at 539-40 (internal quotation marks and citations omitted).  Defendant

seeks dismissal of these claims, asserting that Plaintiffs have failed to state valid causes of

action.

      *Unlawful Conduct*

      Plaintiffs contend that Defendant knowingly and intentionally misled consumers

with its false misrepresentations to increase its profits.  Defendant's conduct is alleged to be

actionable under the CUCL because it violates two other laws: (1) the California False

Advertising Law (the "CFAL"), § 17500 et seq., and (2) the California Consumer Legal

Remedies Act (the "CLRA"), § 1750 et seq.  Under these California statutes, conduct is

"deceptive" or "misleading" if it is likely to deceive an ordinary consumer.  Williams v. Gerber

Products Co., 552 F.3d 934, 938 (9th Cir. 2008).

The CFAL prohibits any "unfair, deceptive, untrue or misleading advertising."

Cal. Bus. & Prof. Code § 17500.  For the same reasons that Plaintiffs' claim under New York

General Business Law Section 349 fails (that is, Defendant's representations are nonactionable

puffery and/or lacked sufficient specificity to be of a kind that would deceive an ordinary

consumer), Plaintiffs' attempt to state a claim under the analogous California statute must also

fail.  Plaintiffs' CUCL claim will therefore be dismissed to the extent it is premised on alleged

violations of California Business and Professions Code § 17500.

California's CLRA prohibits "unfair methods of competition and unfair or

deceptive acts or practices."  Cal. Civ. Code § 1770.  Plaintiffs contend that Defendant's actions

and representations violated § 1770(a)(5) ("Representing that goods or services have

sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not

have or that a person has a sponsorship, approval, status, affiliation, or connection which he or

she does not have."), (a)(7) ("Representing that goods or services are of a particular standard,

quality, or grade, or that goods are of a particular style or model, if they are of another."), (a)(9)

("Advertising goods or services with intent not to sell them as advertised."), and (a)(16)

("Representing that the subject of a transaction has been supplied in accordance with a previous

representation when it has not.") of the CLRA, and seek to enjoin Defendant's practices pursuant

to § 1780(a)(2).

For the reasons previously stated with respect to the claims under New York General Business Law § 349 and California Business and Professions Code § 17500, Plaintiffs' claims under California Civil Code § 1770 targeting alleged misrepresentations and deception contained in Defendant's advertisements must also fail. Moreover, the injunctive relief sought under CLRA, § 1780(a)(2) is unavailable because Plaintiff Noia indisputably no longer subscribes to Defendant's services and therefore lacks standing to seek injunctive relief against Defendant.

In order for a plaintiff to obtain prospective injunctive relief, he must establish that there is a "likelihood of future injury." See, e.g., White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." Lujan v. Defenders of Wildlife, 504 U.S. 555, 564 (1992). Indeed, "[p]ast exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." Mayfield v. United States, 599 F.3d 964, 970 (9th Cir. 2010). Once a plaintiff has demonstrated an injury-in-fact, he is "entitled to injunctive relief only if he can show that he faces a real or immediate threat . . . that he will again be wronged in a similar way." Id. Because Plaintiffs have not alleged that Noia faces such a threat or will again be wronged in a similar way, Plaintiffs lack standing to seek injunctive relief.

*Unfair Conduct*

Plaintiffs contend only in passing and in conclusory fashion that Defendant's conduct is "unfair" within the meaning of the CUCL. California courts define an "unfair

business practice" as either: (1) a practice that undermines a legislatively declared policy or threatens competition, or (2) a practice that has an impact on its alleged victim that outweighs the reasons, justifications, and motives of the alleged wrongdoer.  See Lozano v. AT & T Wireless Servs ., Inc., 504 F.3d 718, 736 (9th Cir. 2007).  The Ninth Circuit has concluded that "an 'unfair' business practice occurs when [such practice] offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  Id.

Plaintiffs allege that Defendant is motivated by its desire to maximize profits. However, it is well settled that business enterprises have a legitimate interest in seeking a profit. Kunert v. Mission Financial Services Corp., 110 Cal. App. 4th 242, 265 (2003).  Plaintiffs have not pleaded facts regarding any legislatively declared policy that Defendant's conduct allegedly violates, nor does the Complaint provide factual allegations that would enable a reasonable fact finder to determine that either standard of "unfair" conduct has been satisfied.

*Fraudulent Conduct*

The CUCL can also be violated by a fraudulent business act or practice. "Fraudulent" as used in section 17200 is "not predicated upon proof of the common law tort of deceit or deception but simply means whether the public is likely to be deceived."  Countrywide Financial Corp. v. Bundy, 187 Cal. App. 4th 234, 257 (2010).  Plaintiffs' allegations, because they rest on nonactionable puffery or fail to supply sufficient facts to support their misrepresentation allegations, fail to meet the standard of likelihood of public deception for substantially the reasons explained above in connection with Plaintiff's New York General Business Law Section 349 claim.

Because there is no violation of the CFAL or the CLRA as explained above, it is not alleged adequately that Defendant's practices are "unfair," and Plaintiffs have failed to allege adequately that Defendant's business acts or practices are fraudulent, Plaintiffs fail to state a claim under the CUCL.

Accordingly, Defendant's motion for judgment on the pleadings as to Counts IX – XI is granted.

Motion for Summary Judgment and Motion to Strike

The Court need not address Defendant's motion for summary judgment as to the Counts on which Defendant's motion for judgment on the pleadings has been granted (Counts III, IV, V, VI, VIII, IX, X, and XI).  The Court will, however, consider Plaintiffs' motion to strike because Defendant seeks summary judgment as to Plaintiffs' fraud claim, Count VII.

Plaintiffs' Motion to Strike

Plaintiffs' move to strike portions of Defendant's submitted affidavits from Frank McKeon ("McKeon") and Satenik Abeshyan ("Abeshyan") pursuant to Federal Rule of Civil Procedure 56(e).  Defendants have not opposed this motion.  In light of Defendant's consent to Plaintiffs' motion to strike (see docket entry no. 59, Def.'s Reply Mem. of Law at 2, note 4), Plaintiffs' motion to strike is granted in its entirety.

Deceit, Fraud, and/or Misrepresentation Claim (Count VII)[8]

Defendant seeks summary judgment as to Plaintiffs' fraud claim based on the

---

[8]      As noted above, in light of the Court's granting of Defendant's motion for judgment on the pleadings as to Counts III, IV, V, VI, VIII, IX, X, and XI, the Court need not reach Defendant's motion for summary judgment as to these counts.

legal doctrine of voluntary payment.[9]

The voluntary payment doctrine is a common law doctrine that "bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." Dillon v. U-A Columbia Cablevision of Westchester, Inc., 100 N.Y.2d 525, 525 (1993). Defendant argues that Plaintiffs' claims are barred by this doctrine because Plaintiffs were aware that they were receiving something different (slower, interrupted internet service) than what they allege they paid for, but nonetheless they continued (and in the case of Fink, continue) to pay for the allegedly inferior service.

However, the voluntary payment doctrine does not apply when a plaintiff's claim is predicated on a lack of full disclosure by defendant. See Spagnola v. Chubb Corp., 574 F.3d 64, 73 (2d Cir. 2009); see also Samuel v. Time Warner, Inc., 809 N.Y.S.2d 408, 418 (Sup. Ct.

---

[9]     Defendant initially argued that summary judgment was appropriate based on a Terms of Use policy, which includes a Subscriber Agreement (which, in turn, refers to an online Acceptable Use Policy), but withdrew this basis for summary judgment in their reply papers. Plaintiffs assert that the Court should disregard the Defendant's voluntary payment argument because it is raised only in the reply brief. Typically, a court "need not consider" arguments "raised for the first time in [a party's] reply brief." Thomas v. Roach, 165 F.3d 137, 145-46 (2d Cir. 1999). This policy is in place to protect a party from unfair surprise by a legal argument that has not been researched and addressed. See Cifarelli v. Vill. of Babylon, 93 F.3d 47 (2d Cir. 1996) (finding that the district court did not abuse their discretion in considering an argument first made explicitly in reply brief where plaintiff was "fully aware prior to the defendants' reply of their defense. . ."). However, the Second Circuit has made it clear that a district court has discretion to consider a belatedly-raised argument. See Am. Hotel Intern Group, Inc. v. OneBeacon Ins. Co., 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009). A court can allow the opposing party an opportunity to respond to the new arguments raised. See Brazier v. Hasbro, Inc., 99 Civ. 11258, 2004 U.S. Dist. LEXIS 12455, *4 (S.D.N.Y. June 30, 2004) ("Because Brazier had not yet had the opportunity to respond to defendants' attacks on his experts, the court directed him to submit a response to defendants' attacks on his experts."). Here, the Plaintiffs requested and were granted permission to file a sur-reply. (April 26, 2010, Memo-Endorsed Letter.) The Court will, therefore, consider the merits of the voluntary payment argument.

NY 2005) (the voluntary payment doctrine did not apply to claims "predicated on the absence of full disclosure at the time of installation"). Issues of disclosure, notice, and authorization are very much contested in the instant action. In addition to the misrepresentation allegations discussed above, Plaintiffs proffer that Defendant's policy was to misrepresent to customers the reasons for slow service. Because Defendant has failed to establish the absence of a genuine issue of material fact as to the disclosures given to Plaintiffs and Plaintiffs' knowledge of Defendant's practices when Plaintiffs made payments, summary judgment is inappropriate.

Accordingly, Defendant's motion for summary judgment is denied as to Count VII.[10]

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to strike is granted in its entirety; Defendant's motion for judgment on the pleadings is denied as to Counts I and II, and granted as to Counts III – VI and VIII – XI; and Defendant's motion for summary judgment is denied in its entirety.

Plaintiffs' request for leave to replead Counts IV, V, VI, VIII, IX, X, and XI is granted. Any second amended complaint must be filed by **September 30, 2011**. Failure to timely file a further amended complaint by this date will result in dismissal of Counts IV, V, VI, VIII, IX, X, and XI with prejudice. Count III is hereby dismissed with prejudice, an opportunity to replead this cause of action having already been grated by the Court's July 23, 2009,

---

[10] Because Defendant's motion for summary judgment was withdrawn as to Counts I – III, and the Court grants Defendant's motion for judgment on the pleadings as to Counts III, IV, V, VI, VIII, IX, X, and XI, Defendant's motion for summary judgment as to these seven counts is denied as moot. Defendant's motion for summary judgment is therefore denied in its entirely.

Memorandum Opinion and Order.

This Memorandum Opinion and Order resolves docket entry nos. 38 and 50.

This case remains referred to Judge Fox for general pretrial management, including discovery disputes and settlement discussions.


SO ORDERED.


Dated: New York, New York
September 6, 2011

_____
LAURA TAYLOR SWAIN
United States District Judge