UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

JESSICA FINK et al.,

        Plaintiffs,

   -v-

TIME WARNER CABLE,

        Defendant.

-------------------------------------------------------x

No.  08 Civ. 9628 (LTS)(KNF)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 23 DEC 2011

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jessica Fink ("Ms. Fink") and Brett Noia ("Mr. Noia") (collectively, "Plaintiffs") bring this putative nationwide class action pursuant to 18 U.S.C. § 1030, asserting claims for violation of the Computer Fraud and Abuse Act, violation of New York and California consumer protection statutes, common law fraud, breach of implied covenant of good faith and fair dealing, and unjust enrichment  against Defendant Time Warner Cable ("Defendant" or "Time Warner Cable").  Plaintiffs assert that Defendant misrepresents its "Road Runner" Internet service as a high-speed service when, in reality, Defendant "throttles" its subscribers' Internet access, thereby robbing subscribers of paid-for services and forcing them to waste time and effort and incur additional costs while seeking alternate ways to access Internet services.  This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1332 and 1367.  Before the Court is Defendant's motion to dismiss Plaintiffs' Second Amended Complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.  The Court has reviewed carefully all of the parties submissions and, for the following reasons, Defendant's motion is granted in its entirety.

BACKGROUND

The facts of this case are recounted in detail in the Court's September 6, 2011, Memorandum Opinion and Order ("September 6, 2011, Opinion"). For purposes of this motion practice, the following relevant facts are taken from the Second Amended Complaint and accepted as true.

Plaintiff Jessica Fink is a citizen of New York and resides in New York County, New York. (SAC ¶ 16.) Plaintiff Brett Noia is a citizen of California and resides in Los Angeles County, California. (SAC ¶ 23.) Since at least November 2003, Plaintiffs Fink and Noia have subscribed to Defendant's Road Runner service. (SAC ¶¶ 16, 23.) Plaintiffs sue on their own behalf and on behalf of a putative nationwide class of persons, that includes all people who subscribed to Defendant's "Road Runner High Speed Online" Internet service ("Road Runner") from November 7, 2003, to the date of class certification, pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure. (SAC ¶¶ 1, 51.) Ms. Fink also seeks to sue on behalf of a subclass of New York residents and Mr. Noia seeks to sue on behalf of a subclass of California residents. (SAC ¶ 52.)

Defendant advertises its Road Runner Internet service as a high speed service that provides an "always-on connection" that is "up to 3 times the speed of most standard DSL packages and up to 100x faster than dial-up," and provides the "fastest, easiest way to get online." (SAC ¶ 2.) In practice, however, Defendant "throttles" its subscribers' Internet access, blocking and delaying certain Road Runner Internet communications. (SAC ¶ 3.) In choosing to purchase Defendant's service, Ms. Fink and Mr. Noia relied upon Defendant's representations that the Road Runner service was "high-speed" with an "always-on connection" that was "up to 3 times the speed of most standard DSL packages and up to 100x faster than dial-up." (SAC

¶¶ 16, 23.)  The speed for a standard DSL connection is 1.5 megabytes per second ("Mbps") for

download and 384 kilobytes per second ("Kbps") for upload.  (SAC ¶ 19.)  Standard dial-up

speeds are 52.2 Kbps for download and 53 Kbps for upload.  (Id.)  An internet service at three

times the speed of a standard DSL package would provide speeds of approximately 4.5 Mbps for

download and 1,152 Kbps for upload.  (SAC ¶ 20.)  A service at 100x the speed of dial-up would

provide speeds of approximately 5,220 Kbps for download and 5,300 kbps for upload.  (Id.)

   When using Defendant's Road Runner service, Ms. Fink and Mr. Noia both found

that their Internet connections were blocked when they tried to use network services such as

Skype, leaving them with internet speeds of 0 Kbps for both uploads and downloads.  (SAC

¶¶ 17, 24.)  When using other programs, including BitTorrent, FTP and HTTP, Mr. Noia found

that his Internet upload speed was very slow, ranging from 10 Kbps to 30 Kbps.  (SAC ¶ 30.)


Procedural History

   In the First Amended Complaint, Ms. Fink asserted the following causes of

action: (i) three separate violations of the Computer Fraud and Abuse Act (CFAA) (Counts I -

III); (ii) deceptive sales practices in violation of New York General Business Law § 349 (Count

IV); (iii) breach of contract (Count V); (iv) breach of implied in fact contract and covenant of

good faith and fair dealing (Count VI); (v) deceit, fraud and/or misrepresentation (Count VII);

and (vi) unjust enrichment (Count VIII).  (See First Amended Class Action Complaint ¶¶ 48-

100, Aug. 7, 2009, ECF No. 35) (hereinafter "FAC.")  Mr. Noia asserted the same causes of

action on behalf of the California subclass, but instead of alleging a violation of N.Y. Gen. Bus.

Law § 349, he alleged (vii) unfair, unlawful and fraudulent business practices in violation of the

California Business and Professions Code, §§ 17200 et seq (Count IX); (viii) misleading,

deceptive or untrue advertising in violation of Cal. Bus. and Prof. Code, §§ 17500 et seq. (Count

X); and (ix) violations of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750

et seq. (Count XI).  (FAC ¶¶ 101-131.)

On September 6, 2011, this Court ruled as follows on Defendant's motion for

judgment on the pleadings with respect to the First Amended Complaint: 1) dismissed with

prejudice Count III because Plaintiffs failed to adequately plead "loss" under the CFAA; 2)

dismissed, with leave to replead, Plaintiffs' consumer fraud claims (Counts IV, IX, X, and XI)

because Plaintiffs' allegations rested on nonactionable puffery or failed to supply sufficient facts

to establish that Defendant's advertising representations were deceptive; and 3) dismissed, with

leave to replead, Plaintiffs' breach of contract, breach of implied-in-fact contract, and unjust

enrichment claims (Counts V, VI, and VIII) because Plaintiffs did not establish that Defendant's

advertisements contained sufficient specific, concrete, factual representations to supply the terms

of either an actual or implied-in-fact contract, or to support a claim for unjust enrichment.

Defendant did not move to dismiss Count VII of the First Amended Complaint - Plaintiffs'

assertion of "deceit, fraud and/or misrepresentation."

In the Second Amended Complaint (SAC), Plaintiffs assert their remaining two

CFAA claims (Counts I and II), their consumer fraud claims under New York and California law

(Counts III, VII - IX); their breach of implied in fact contract claim (Count IV); their "deceit,

fraud and/or misrepresentation" claim (Count V); and their unjust enrichment claim (Count VI).

Plaintiffs do not reassert their breach of actual contract claim (Count V in the First Amended

Complaint).

Shortly after Plaintiffs filed the SAC, the Court considered Defendants'

September 21, 2011 Motion for Reconsideration of the September 6, 2011 Order.  On October

28, 2011, the Court granted Defendants' Motion for Reconsideration and dismissed with prejudice Counts I and II of Plaintiffs' First Amended Complaint. Those two counts are re-stated verbatim in Plaintiffs' Second Amended Complaint and accordingly, are dismissed.

DISCUSSION

Standard of Review

When deciding a motion to dismiss a complaint for failure to state a claim under Rule 12(b)(6), the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). While detailed factual allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Pleadings consisting only of "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S., at 555). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotations and citations omitted).

New York General Business Law § 349 (Count III)

N.Y. Gen. Bus. Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state," and is violated when (1) the defendant's challenged acts or practices are directed at consumers, (2) the acts or practices are misleading in a material way, and (3) the plaintiff sustains injury as a result. Cohen

v. JP Morgan Chase & Co., 498 F.3d 111, 126 (2d Cir. 2007).  "Deceptive acts or practices" are

"those likely to mislead a reasonable consumer acting reasonably under the circumstances."

Rabin v. MONY Life Ins. Co., No. 06-775, 2007 U.S. Dist. LEXIS 18437, at *15 (S.D.N.Y.

Mar. 8, 2007) (internal citations omitted).  The question at this juncture is whether Plaintiffs

have alleged facts sufficient to plead plausibly their claim that Defendant's advertisements

qualify as deceptive acts or practices likely to mislead a reasonable consumer acting reasonably

under the circumstances.

        In their First Amended Complaint, Plaintiffs asserted that Defendant violated

New York law by misrepresenting the nature and quality of its high-speed internet service.  In

particular, Plaintiffs argued that Defendant made the following false advertising claims: that its

high-speed internet service provides an "always-on connection" that is "blazing fast" and is the

"fastest, easiest way to get online," and that the service offers speeds "up to 3 times the speed of

most standard DSL packages and up to 100x faster than dial-up."  (FAC ¶ 20; see also Opinion

at 14-15.)  In its September 6, 2011, Opinion, the Court held that the claims "blazing fast" and

"fastest, easiest way to get online" were non-actionable puffery.  (Opinion at 15.)  The Court

acknowledged that representations regarding the "always-on connection" and speeds "up to"

specified multiples faster than DSL and dial-up connections were more specific, but nonetheless

found that Plaintiffs had failed to allege facts sufficient to demonstrate that these representations

were materially misleading.  (Opinion at 15 - 16.)

        In their Second Amended Complaint, Plaintiffs assert that Defendant's

representations that its internet service provides an "always on connection" that is "up to 3 times

the speed of most standard DSL packages and up to 100x faster than dial-up" are deceptive,

because Defendant intentionally interferes with its subscribers' Internet connections by delaying

and blocking certain communications. (SAC ¶¶ 2, 3.) Plaintiffs allege that Ms. Fink and Mr. Noia did not have "always-on connections" because their Internet connections were blocked when they tried to use network services such as Skype. (SAC ¶¶ 17, 24.) Similarly, Plaintiffs allege that Ms. Fink and Mr. Noia did not receive high-speed Internet service that was "up to 3 times the speed on most standard DSL packages and up to 100x faster than dial up" because, when using programs such as Skype, BitTorrent, FTP and HTTP, both Ms. Fink and Mr. Noia routinely experienced low Internet speeds of 0 to 30kbps. (SAC ¶¶ 22, 29, 30.)

   Plaintiffs' allegations are insufficient to establish that Defendant's advertisements of an "always-on connection" with speeds "up to" 3x faster than DSL and 100x faster than dial-up were deceptive as required by N.Y. Gen. Bus. Law § 349. Plaintiffs' principal argument is that they did not have access to an "always-on connection" because they were blocked from using certain Internet applications, notably Skype. Plaintiffs do not allege, however, that their Internet connections as a whole were blocked or that, even when Skype (or a comparable program) was blocked, they could not have accessed other applications through the Internet.

   Similarly, Plaintiffs argue that their connections did not provide speeds up to 3x faster than DSL and 100x faster than dial-up because their upload and download speeds, while using applications such as Skype, BitTorrent, FTP and HTTP, were often only 30 Kbps or lower. These allegations, accepted as true, are nonetheless insufficient to establish that Plaintiffs' *overall* Internet connections did not provide the promised speeds; rather, Plaintiffs plead merely that their Internet connections while using a limited subset of applications were slower than promised. Furthermore, Defendant's representations as to the speed of its Internet service are qualified by the phrase "up to," which would lead a reasonable consumer to expect that speeds could be less than the advertised "3x faster" and "100x faster" speeds.

Plaintiffs' reliance on <u>Walter v. Hughes Communications</u>, 682 F. Supp. 2d 1031 (N.D. Cal. 2010) and <u>Goshen v. Mut. Life</u>, 98 N.Y.2d 314 (2002) is misplaced.  In <u>Walter</u>, the court denied a motion to dismiss a complaint where plaintiffs alleged that they were "unable to experience the speeds that [defendant] had advertised its [Internet] service as reaching 'up to.'" 682 F. Supp. at 1043.  Similarly, in <u>Goshen</u>, the court found that plaintiffs had sufficiently stated a claim for deceptive acts and practices under N.Y. Gen. Bus. Law § 349 when they alleged that defendants' misrepresented the speed and quality of their internet service.  98 N.Y.2d at 326-27.

In both these cases, however, plaintiffs made specific allegations about the speed of their *overall* Internet connections, as opposed to the instant case, in which plaintiffs allege only that their connection speeds were subpar with respect to a narrow subset of applications.  In <u>Walter</u>, for example, individual plaintiffs who repeatedly monitored the speed of their overall connections alleged that their average connection speeds were much slower than the maximum speed advertised by the defendant internet services provider.  682 F. Supp. at 1043-44.  And in <u>Goshen</u>, plaintiffs' allegations pertained to their Internet service as a whole, allowing the court to find that Plaintiffs had sufficiently stated a claim for deceptive acts when they alleged that "contrary to defendants' representations, the *service* was slow and unreliable," and that "the DSL *connection* 'rarely, if ever, approache[d] the high speed' expressly represented by defendants." 98 N.Y.2d at 324 (emphases added).

Plaintiffs have failed to plead facts sufficient to make out a plausible claim for violation of N.Y. Gen. Bus. Law § 349.  Count III of the SAC will therefore be dismissed.


<u>CA Business and Professions Code 17200, 17500, and 1750 Claims (Counts VII - IX)</u>

California's Unfair Competition Law (CUCL) prohibits any "unlawful, unfair or

fraudulent business act or practice." Cal. Bus. & Prof. Code §§ 17200 et seq.; see also Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co., 973 P.2d 527, 539 (Cal. 1999). Plaintiffs allege that Defendant's conduct is actionable under the CUCL because it violates the California False Advertising Law ("CFAL"), §§ 17500 et seq., and the California Consumer Legal Remedies Act ("CCLRA"), §§ 1750 et seq. The CFAL prohibits any "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17500. The CCLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. Under both statutes, conduct is "deceptive" or "misleading" if it is likely to deceive a reasonable consumer. Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008). Just as Plaintiffs' claim under N.Y. Gen. Bus. Law § 349 fails because Plaintiffs do not state facts sufficient to establish that Defendant's advertisements were materially misleading, Plaintiffs' claims under Cal. Bus. & Prof. Code § 17500 and Cal. Civ. Code § 1750 also fail. Plaintiff's CUCL claim is likewise dismissed, as it is premised on violations of § 17500 and § 1750.

Breach of Implied in Fact Contract Claim (Count IV)

In the First Amended Complaint, Plaintiffs asserted a claim for breach of implied in fact contract and covenant of good faith and fair dealing, alleging that they entered into an implied-in-fact contract with Defendant on the basis of its advertising representations as to its high-speed Internet services. (FAC ¶¶ 82-83.) Plaintiffs then alleged that this contract was breached by Defendant's "practice of offering 'low-speed' Internet service and impairing access to the content, services and applications that the Internet has to offer." (FAC ¶ 83.) As discussed above, the advertising representations at issue were Defendant's statements that its Internet service offers an "always-on connection" that is "blazing fast," is the "fastest, easiest

way to get online," and provides speeds "up to 3 times the speed of most standard DSL packages and up to 100x faster than dial-up." (FAC ¶ 20.) In its September 6, 2011, Opinion, the Court dismissed Plaintiffs' claim for breach of implied in fact contract, finding that "the advertisements referred to by Plaintiffs do not contain sufficient specific, concrete, factual representations such that they could be interpreted to supply the terms of an implied contract." (Opinion at 18.)

In the SAC, Plaintiffs limit their allegations to include only the first ("always-on connection") and fourth (connection speeds "up to 3 times the speed of most standard DSL packages and up to 100x faster than dial-up") of Defendant's advertising representations. Plaintiffs allege that they accepted Defendant's "offer" based upon Defendant's promises as to the quality of its internet services, including that "it would provide an 'always on connection' Internet service with 'up to 3 times the speed on most standard DSL packages and up to 100x faster than dial-up.'" (SAC ¶ 86.) Plaintiffs provide no further specific, concrete, factual representations from Defendants' advertisements that could be interpreted to supply the terms of an implied contract. Instead, Plaintiffs' allegations are substantively identical to the allegations already deemed insufficient in the First Amended Complaint, warranting dismissal of Plaintiffs' claim for breach of implied in fact contract.

Deceit, Fraud and/or Misrepresentation Claim (Count V)

Defendant argues that Plaintiffs' claim for deceit, fraud and/or misrepresentation must be dismissed because Plaintiffs do not adequately plead that Defendant's advertising

representations were false, as required by New York law.[1]  Plaintiffs contend that Defendant is

precluded from asserting this argument because it was never raised with respect to Plaintiffs'

similar claims in either of the prior complaints filed in this action.  Plaintiffs rely on FRA v.

Surg-O-Flex of America, Inc., 415 F. Supp. 421, 428 (S.D.N.Y. 1976) and Wafra Leasing Corp.,

247 F. Supp. 2d 987, 999 (N.D. Ill. 2002), two cases in which courts denied defendants' motions

to dismiss when those motions raised arguments that could have been raised in earlier motions.

In FRA and Wafra, defendants raised new arguments on a second and third motion to dismiss,

respectively.  See FRA, 415 F. Supp. at 428; Wafra, 247 F. Supp. at 999.  In neither case,

however, had the law developed between the initial and subsequent motions to dismiss.  Here, by

contrast, Defendants interposed their motion to dismiss Plaintiff's "fraud, deceit and/or

misrepresentation" claim after the Court's September 6, 2011, Opinion, which held that, in their

FAC, Plaintiffs had failed to plead facts sufficient to establish that Defendants' advertising

representations of an "always on connection" that could reach speeds "up to" 3x that of DSL and

100x that of dial-up were deceptive.  (Opinion at 14-16, 19-21.)  A fraud claim under New York

common law requires Plaintiffs to allege facts sufficient to establish that the Defendant made a

material false representation - precisely what the Court found that Plaintiffs did *not* establish in

their FAC.  See American High-Income Trust v. Alliedsignal, 329 F. Supp. 2d 534, 544

(S.D.N.Y. 2004).  Given this intervening legal development, the Court considers Defendant's

motion to dismiss Count V of the SAC on the merits and finds that, as explained above,

---

[1] The elements of a common law fraud claim under New York law are as follows: Plaintiff must allege that "(1) the defendant made a material false representation, (2) with the intent to defraud plaintiff, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." American High-Income Trust v. Alliedsignal, 329 F. Supp. 2d 534, 544 (S.D.N.Y. 2004) (internal citations omitted).

Plaintiffs have not adequately alleged that Defendant's advertisements were materially false representations, and so fail to state a claim for common law fraud.


Unjust Enrichment Claim (Count VI)

In the First Amended Complaint, Plaintiffs asserted a claim for unjust enrichment, alleging that Defendant was enriched at Plaintiffs' expense as a result of Defendant's deceptive, fraudulent and misleading advertising of its high-speed Internet service. (FAC ¶ 100.) Again, the advertisements at issue were Defendants' four statements, discussed at length above. In its September 6, 2011, Opinion, the Court dismissed Plaintiffs' claim for unjust enrichment, finding that Plaintiffs' allegations (that they paid a premium for high speed internet services that were not received) were, "in light of the general advertising claims and amorphous, unmeasurable promises on which they are based," insufficient to state a claim for unjust enrichment. (Opinion at 18-19.)

Plaintiffs' allegations in the SAC are essentially unchanged from those of the FAC. Plaintiffs once more allege that Defendant, as a result of its deceptive, fraudulent and misleading advertisements - in particular, its promises of an "always-on connection" that is up to 3 times the speed on most standard DSL packages and up to 100x faster than dial-up - is enriched at Plaintiffs' expense. (SAC ¶ 103.) As in the FAC, these allegations are insufficient to state plausibly a claim that Defendant's allegedly deceptive advertisements make it unjust for Defendant to retain Plaintiffs' internet subscription fees.


The Issues Raised are Appropriate for a Motion to Dismiss

Plaintiffs' final argument is that Defendant's motion to dismiss raises factual

issues (how a reasonable consumer would interpret representations of an "always-on connection"
that is "up to 3 times the speed of most standard DSL packages and up to 100x faster than dial-
up") that are not properly decided at this stage of litigation.  The Court finds, however, that
Plaintiffs' allegations that they experienced lower-than-promised Internet speeds when using a
narrow subset of applications are insufficient to plead plausibly that a reasonable consumer
could find Defendant's representations of an "always on connection" at "up to" certain speeds
false or materially misleading.

<u>CONCLUSION</u>

   For the foregoing reasons, Defendant's motion is granted and Plaintiff's Second
Amended Complaint is dismissed, pursuant to Fed. R. Civ. P. 12(b)(6).  This Memorandum
Opinion and Order resolves docket entry no. 73.  The Clerk of Court is requested to enter
judgment dismissing the Second Amended Complaint, and to close this case.

Dated: New York, New York
   December 23, 2011

                                  _____
                               LAURA TAYLOR SWAIN
                               United States District Judge